Standard Oil Company v. Tierney.

---

CASE 71—PETITION ORDINARY—DECEMBER 10.

## Standard Oil Company v. Tierney.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

|   |   |
|---|---|
| 92 | 367 |
| 96 | 92 |

|   |   |
|---|---|
| 92 | 367 |
| 103 | 478 |

|   |   |
|---|---|
| 92 | 367 |
| 2 | 436 |
| 92 | 367 |
| 114 | 752 |

|   |   |
|---|---|
| 92 | 367 |
| e121 | 401 |
| 122 | 620 |

|   |   |
|---|---|
| 92 | 367 |
| 126 | 161 |
| 127 | 749 |

1. LIABILITY OF SHIPPER OF EXPLOSIVE SUBSTANCE FOR INJURY TO EMPLOYE OF CARRIER.—When one who delivers to a carrier for transportation an explosive substance fails to notify the carrier or his agent of the dangerous character of the article, and an injury results to an employe of the carrier in its handling, the shipper is liable to the injured employe. But when the carrier is notified what the substance is and the package is so branded as to apprise the carrier of its dangerous nature, the shipper is not liable merely because knowledge was not brought home to the employe. If, however, the shipper and the carrier enter into an agreement by which the explosive is to be shipped under some other than its real name, and it is so shipped with nothing to indicate to the employes of the carrier its dangerous nature, and

injury to an employe results, the shipper is liable, although the agreement with the carrier may have been made in the best of faith.

Naphtha, which is so dangerous that it requires more care in shipping and handling than almost any other explosive substance, was shipped by the appellant under an agreement with the railroad company that it was to be shipped as " carbon oil," and it was so described in the bill of lading, the barrels, however, being branded: "Unsafe for illuminating purposes." The conductor of the train having entered, with a lighted lamp, the car where the naphtha was, for the purpose of stopping a leak, an explosion resulted from the handling of the barrels near the lamp, and the conductor was severely burned. In this action by him against appellant—Held—That the question for the jury was whether the brand upon the barrels was such that one exercising ordinary care and prudence with reference to his own personal safety, and whose duty it was to handle the barrels, should have ascertained the danger. If the brand was sufficient for that purpose defendant is not liable, but if not it is liable.

2. Same—Evidence.—It was competent for defendant to prove that the railroad company, with the knowledge that the barrels contained naphtha, agreed that they might be shipped as carbon oil, and that under such an agreement it had for a long period been shipping barrels of naphtha branded as these were and described in the bills of lading as carbon oil. While these facts do not exonerate defendant from liability they show an absence of bad faith on its part.

3. Same.—The court properly refused to allow defendant to prove that the railroad company had been informed that the words "carbon oil" in the bill of lading meant naphtha.

4. Same.—It was competent for defendant to prove that wooden barrels were safe for the shipment of naphtha and that it was ordinarily shipped in that way by prudent business men.

5. Same.—It was error to allow plaintiff to prove that he had a wife and child.

6. Same.—It was error to permit plaintiff to prove that after the accident in which he was injured both the defendant and the railroad company changed the manner of branding the barrels and labeling the cars. That character of testimony is not competent for the purpose of showing neglect on the part of a defendant.

7. Measure of Damages.—The plaintiff is entitled to recover such a sum as will fairly compensate him for the mental and physical suffering directly resulting from the injuries complained of and for any reduction of his power to earn money.

8. Excessive Verdict.—Although the plaintiff, a vigorous man about thirty years of age, was so badly burned about the face as to disfigure him for life, suffered great pain and anguish for several months and lost the use of his left arm, a verdict for twenty-five thousand dollars

Standard Oil Company v. Tierney.

is excessive. Some moderation must be indulged in arriving at a verdict in such cases.

HUMPHREY & DAVIE FOR APPELLANT.

1. The peremptory instruction for defendant should have been given, because there was nó proof that defendant had failed to do what persons of ordinary prudence usually did under similar circumstances. (Cormas v. Eastern Railroad, 4 Hurlstone & Norman, 781; Dugan v. Champlain Co., 56 N. Y., 1; Crocheron v. North Shore Ferry Co., 56 N. Y., 656; Walker v. Chicago Railroad, 33 N. W. Rep., 224; Alabama Railroad v. Arnold, 4 South. Rep., 366; Burke v. Wetherbee, 98 N. Y., 562; *ante*, pp. 13 to 15.)

2. The peremptory instruction for defendant should have been given because the proximate cause of the injury was not the acts of defendant, but other intervening acts. (Seale v. Gulf Railroad, 57 Am. Rep., 602; 56 Texas, 274; Scheffer v. Railroad Company, 105 U. S., 252; Sutherland on Damages, vol. 1, pp. 48, 56, 59; Cox v. Burbridge, 13 Common Bench, new series, 430; Schofield v. Summers, 9 Benedict, U. S., 526; Cooley on Torts, p. 69; *ante*, pp. 16 to 21.)

3. The court erred in allowing evidence to be introduced to show that *after* the injury changes were made by the Louisville & Nashville Railroad Company and by defendant in the method of branding the barrels and in labeling the cars. (Terre Haute Railroad v. Clem, 123 Ind., 18; Corcoran v. Peekskill, 108 N. Y., 155; Nally v. Hartford Carpet Co., 51 Conn., 524; also in 50 Am. Rep., p. 47; Moss v. Railroad Company, 30 Minn., 465; Payne v. Railroad Company, 9 Hunn., N. Y., 526; Morrell v. Peck, 24 Hunn., 37; Baird v. Daly, 68 N. Y., 547; Patterson's Railway Accident Law, sec. 365; Dugan v. Champlain Co., 56 N. Y., 1; Lang v. Sanger, 76 Wis., 71; Hudson v. C. & N. R., 59 Iowa, 581; Eli v. St. L. R., 77 Mo., 34; *ante*, pp. 21 to 29.)

4. The court erred in permitting the sympathies of the jury to be aroused, and the damages enhanced, by admitting proof that plaintiff had a wife and child dependent on him. (Thompson on Negligence, vol. 2 p. 1263; Rorer on Railroads, vol. 2, p. 1099; Sedgewick on Damages, 7th ed., vol. 1, 641 note; Patterson's Railway Accident Law, sec. 372; Pa. R. v. Roy, 102 U. S., 460; Texas Railroad v. Douglass, 7 S. W. Rep., 78; Shaw v. Boston Railroad, 8 Gray, 45; Pittsburgh Railroad v. Powers, 74 Ill., 343; Chicago v. O'Brennan, 65 Ill., 163; Stephens v. Hannibal Railroad, 9 S. W. Rep., 591; 26 Iowa, 363; 119 Ill., 89; 4 Gray, 333; 39 Conn., 552; 50 Barbour, 628; 48 Ala., 566; 26 Ga., 259; 4 Gill, 406; *ante*, pp. 29 to 34.)

5. The verdict for $25,000, the whole amount sued for, was excessive and entirely out of proportion to the injury in this case or to verdicts usually given for similar injuries. (L. & N. R. v. Fox, 11 Bush, 495, verdict of $30,000 set aside; L. & N. R. v. Smith, 2 Duvall, 560, verdict of $4,750 set aside; L. & N. R. v. Sickings, 5 Bush, 1,

Vol. 92—24

Standard Oil Company v. Tierney.

verdict of $5,000 set aside; Street R. Co. v. Ware, 84 Ky., 267, verdict of $4,000 set aside; L. & N. R. v. Wilsey, 9 Ky. Law Rep., 1008, verdict of $2,500 set aside; Lou. Southern R. v. Minogue, 12 Ky. Law Rep., 378, $10,000 verdict set aside; Chicago R. v. Fillmore, 57 Ill., 265, $25,000 verdict set aside; Chicago R. v. Jackson, 55 Ill., 497, $18,000 verdict set aside; Heddles v. Chicago R., 74 Wis., 259, $30,000 verdict set aside; Gulf R. v. Courtney, 7 S. W. Rep., 625, $25,000 verdict set aside and reduced to $5,000; Kennon v. Gilmer, 22 Pacific Rep., 448, $20,750 verdict set aside; Silverstine v. Houston R., 4 N. Y. S. C. R., 843, $15,000 verdict set aside; 48 Hunn., 292, $13,500 verdict set aside; 52 Hunn., 611, $15,000 verdict set aside; 41 Fed. Rep., 311, $10,000 verdict set aside and reduced to $5,000; Little Rock R. v. Barker, 33 Ark., 560, $10,000 verdict set aside. The highest verdicts in Kentucky ever *sustained* by this court are: L. & N. R. v. Mitchell, 87 Ky., 327, $10,000; L. & N. R. v. Moore, 83 Ky., 675, $8,000; Ky. Cent. R. v. McMurtry, 3 Ky. Law Rep., 625, $8,000; L., C. & L. R. v. Ginther's Adm'r, 80 Ky., 400, $7,500; L. & N. R. v. Collins, 2 Duvall, 114, $5,000; L. & N. R. v. Robinson, 4 Bush, 508, $5,000; L. & N. R. v. Herrick, 13 Bush, 122, $5,000; L. & N. R. v. Schuster, 10 Ky. Law Rep., 65, $5,000; L. & N. R. v. Price's Adm'r, 84 Ky., 301, $5,000; Central Pass. R. v. Kuhn, 86 Ky., 576, $5,000; Louisville Gas Co. v. Gutenkuntz, 82 Ky., 433, $5,000; L., C. L. & L. R. v. Sullivan, 81 Ky., 627, $5,000; Sherley v. Billings, 8 Bush, 155, $4,500; L. & N. R. v. Goetz's Adm'r, 79 Ky., 443, $4,500; Turnpike Co. v. Stuart, 2 Met., 122, $4,000. The judgments in L. & N. R. v. Brooks' Adm'r, 83 Ky., 129, $10,000, and L. & N. R. v. McCoy, 81 Ky., 408, $7,593, were *set aside* upon other grounds.)

WILLSON & THUM FOR APPELLEE.

1. If the facts are undisputed, and there can be no honest difference among reasonable men as to their effect, then the question of negligence is one altogether for the court. (Cincinnati, &c., R. Co. v. Shelby's Adm'r, 85 Ky., 224; Mitchell Case, 87 Ky., 337; Kuhn Case, 86 Ky., 583; Gutenkuntz Case, 82 Ky., 439; Ramsey Case, 12 Ky. Law Rep., 539.)

2. The shipper of a substance dangerous to life or limb is liable to the very last man who is injured by it, if the injury arose because of the concealed dangerous character of the substance, and the want of a sufficient notice of that dangerous character. (Nitro-glycerine Cases, 15 Wall., 524; Blight v. Birmingham Water Co., 11 Exch., 784; Barney v. Burstenlinder, 7 Lou., 210; s. c., 64 Barb., 212; Farrant v. Barnes, 11 C. B. (N. S.); Thompson on Negligence, vol. 1, p. 230; Winterbottom v. Wright, 10 M. & W., 100; Pittsburgh, &c., R. Co. v. Shields, 8 L. R. A., 464; 23 Ohio L. J., 441; 31 Cent., L. J., 168; 8 Railroad & Corp., L. J., 171; 18 Wash., L. R., 577; 24 N. E., 658.)

3. In cases of gross or wanton negligence the jury are authorized to find

Standard Oil Company v. Tierney.

punitive damages. (Day v. Woodworth, 13 Hun., 363; Illinois Railroad Co. v. Cobb, 68 Ill., 53; Cutter v. Smith, 57 Ill., 252; Allen v. Blount, 2 Wood & M., 121; Jennings v. Maddox, 8 B. M., 109; Whipple v. Cumberland Man. Co., 2 Story, 661; Washburn v. Gould, 3 Story, 136; Whitmore v. Cutter, 1 Gall, 473; The Appolon, 9 Wheat., 379; Staats v. Ex. of Teneyck, 3 Caines, 111; Kingsbury v. Smith, 13 N. H., 122; 4 Johns., 1; Street v. Patrick, 12 Me., 9; Beal v. Thompson, 3 B. & P., 407; Pitkin v. Leavitt, 13 Vt., 379; Earle v. Sawyer, 4 Mass., 1; Boston Man. Co. v. Fiske, 2 Mason, 119; Addison on Torts, 314 and 645, sec. 1392; Wood on Nuisances, chap. 27; Tyson v. Ewing, 3 J. J. Mar., 186; 12 Ky. L. R., 378; 87 Ky., 327; Kountz v. Brown, 16 B. M., 577; Phil. R. C. v. Quigly, 21 How., 202; Dibble v. Morris, 26 Conn., 416; Wallace v. Mayer, 2 Hilt., 440; Dickey v. McDonald, 41 Ill., 62; Sutherland on Damages, vol. 1, p. 718; Hopkins v. Railroad, 36 N. H., 9; Lou. S. R. Co. v. Minogue, 12 Ky. L. R., 378; L. & N. R. Co. v. Mitchell, 87 Ky., 327.)

4. The jury are the judges of the amount of damages, and it must be a case of outrageous damages to call for the intervention of the court. (N. N. & M. V. R. Co. v. Dentzel's Adm'r, 12 Ky. L. R., 626; Lou. Sou. R. Co. v. Minogue, 12 Ky. L. R., 379; L. & N. R. Co. v. Sheets, 11 Ky. Law Rep., 781; Wood's Mayne on Damages (Ed. 1880), 798; 1 Sutherland on Damages, 810; 2 Sedgwick on Damages (7 Ed.), 652; Gilbert v. Burtenshaw, Cowper, 230; Wiggin v. Coffin, 3 Story, 1.)

5. The verdict is not excessive. (Walker v. Erie R. Co., 68 Barb.; Shaw v. Boston R. Co., 8 Gray, 45; Fair v. L. N. W. R. Co., 21 Law Times, 326; Choppin v. N. O. R. Co., 17 La. Ann., 19; Alberti v. N. Y. & L. E. R. Co., 118 N. Y., 77; Murray v. Brooklyn City R. Co., 7 N. Y. S., 900; Nadan v. White River Co., 43 N. W., 1135; Howard Oil Co. v. Davis, 13 S. W., 665; Fitch v. Broadway & S. A. R. Co., 16 N. Y., 225; Little Rock, &c., R. Co. v. Cagle, 14 S. W., 89; Sprague v. Atlee, 46 N. W., 756; Olson v. St. Paul & D. R. Co., 48 N. W., 445; Trinity & S. R. Co. v. Lane, 15 S. W., 177; Wallace v. Vacuum Oil Co., 12 N. Y. S., 425; Maggiolo v. The Minniola, 44 Fed., 143; Vredenburgh v. N. Y. Cent. R. Co., 12 N. Y., 18; Jordan v. N. Y. & H. R. R., 9 N. Y. S., 506; Texas Pa. Ry. Co. v. Overheiser, 13 S. W., 468; Tex. & P. Ry. v. Johnson, 13 S. W., 463; Mo. Pac. Ry. Co. v. Texas Pa. Ry. Co., 41 Fed., 316; Mo. Pac. Ry. Co. v. Jones, 12 S. W., 972; Neilson v. Marinette & M. Co., 44 N. W., 772; Western & A. R. Co. v. Lewis, 10 S. E., 736; N. E. R. Co. v. Chandler, 10 S. E., 586; Mo. Pac. R. Co. v. Lehmberg, 12 S. W., 838; Ridenhour v. Kansas City Cable R. Co., 13 S. W., 889; Evans v. Am., &c., Co., 37 Fed., 519; McDonald v. U. P. R. Co., 42 Fed. Rep., 579; Fitch v. Broadway, &c., Co., 32 N. Y. S., 376; Hedles v. Chicago & N. W. R. Co., 46 N. W., 115; Sprague v. Atler, 46 N. W., 756; International & G. R. Co. v. Bragzell, 44 Am. & Eng. R. Cas., 437.)

6. The court did not err in allowing plaintiff to prove that he had a wife

and child. In any event the error, if any, was not prejudicial. (L. &. N. R. Co. v. Mitchell, 10 Ky. L. Rep., 217; Central Pass. Railway v. Kuhn, 86 Ky., 79; 39 Mo., 468; 8 Pa. St., 479; 2 Rorer on Railroads, 1099.)

7. It was competent for plaintiff to prove that since the injury words of warning have been placed upon cars containing gas naphtha.

WM. LINDSAY of counsel on same side.

JUDGE PRYOR delivered the opinion of the court.

In April, of the year 1888, the Standard Oil Company, at its place of business in the city of Louisville, loaded two cars belonging to the Louisville & Nashville Railroad Company with oil. One of the cars contained sixty-five barrels, thirty-five of those barrels being naphtha oil and the remainder the ordinary illuminating oil. This car was loaded by the company, the car being on a side track near its warehouse, belonging to the Louisville & Nashville Railroad, and was intended to be shipped South. The testimony shows that the cars were known as cattle cars with open lattices, and that offered by the defense shows that the oil was in barrels that had been carefully inspected and such barrels as were generally used in shipping naphtha or other products of petroleum, and the barrels containing naphtha branded, as they maintain, as required by the statute, "unsafe for illuminating purposes." The head of the barrel was painted white with this brand in black letters in the center. The cars were taken from this switch by the Louisville & Nashville road by its freight engine or train in charge of the appellee, who was the conductor. After leaving Louisville, when some twenty or thirty miles from the city, the appellee discovered that oil was leaking from some one of the barrels, and after passing one or two depots he directed one of the employes to ascertain where the

leak was.  There is a window about two feet square at the end of the car which the employe climbed into with his lantern and passing through this window into the car discovered the barrel that was leaking.  The appellee being informed by the employe of the condition of the barrel, the two, with a lamp each, passed through this window into the car, and finding that they could not handle the barrel the appellee called for another employe who passed through this window with his lamp.  They set their lamps on the heads of the barrels and proceeded to raise the leaking barrel from the floor when, by the motion of the barrel or its peculiar position when being moved, the naphtha spouted out in a stream as large as a pencil, took fire from the burning lamp and seriously injured the appellee.  Whether the liquid was thrown on the lamp or the explosion took place from the vapor produced by the naphtha is a mooted question.  The appellee was badly burned and instituted this action against the appellant to recover damages for the injury, alleging that this naphtha was shipped as *carbon oil* and that he had no notice whatever of the inflammable character of the fluid.  He claimed damages to the amount of twenty-five thousand dollars, and that sum the jury awarded him. He was badly burned about the face, so much so as to disfigure him for life; suffered much pain and anquish for several months; lost the use of his left arm, and his right hand is to some extent injured; his feet were also badly burned, but the principal injury after his recovery consists in the loss of the use of his left arm and the disfigurement of his face.

The defense relies upon various grounds for a reversal: 1. That it took all the necessary care and precaution in

shipping the oil; that it marked it *unsafe for illuminating purposes;* that the carrier knew the car contained barrels of naphtha and that the entire product of petroleum had been shipped and was being shipped as *carbon oil* under an agreement to that effect with the railroad company, and that it was the duty of that company to have notified its employes of the danger. 2. That the court erred in admitting incompetent testimony and in denying to the defendant the right to introduce testimony that was competent. 3. In giving erroneous instructions to the jury and in refusing to give defendant's instructions. 4. The damages are excessive.

There were numerous instructions asked by the plaintiff and the defendant, all of which were refused, and the instructions prepared and given by the trial judge. In determining the questions raised by the instructions it will be necessary to notice the testimony for the defense that was excluded, as this testimony, if admitted, must have an important bearing on the issue in establishing at least good faith on the part of the appellant in delivering this naphtha to the carrier. It was offered by way of defense on the part of the appellant that the railroad company, whose agent and employe the conductor was at the time of the injury, knew that this car contained naphtha, and if not, that under an agreement with the company, through its officials, it had been shipping on its cars barrels of naphtha for a long period branded in the manner specified, with bills of lading, under the general designation of *carbon oil,* the railroad company knowing that the term embraced *naphtha,* and took it with that understanding, charging the same freight and shipping it as any other oil. The court refused to permit this testi-

mony to go to the jury, and this is one of the errors complained of.

It is evident that if the owner, when shipping explosive or combustible substances, fails to notify the carrier or his agent of the danger attending its use, when transporting it, and an injury results to the employes of the carrier, the owner is liable for the injury sustained; but when the carrier is notified of the dangerous article or product (and there is none more so than naphtha when coming in contact with a burning lamp or with fire), and there is marked on the head of the barrel that which must necessarily apprise the carrier of its dangerous nature, and the carrier in his ordinary line of business undertakes to transport it and an injury occurs to one of its employes, the question then arises, is the shipper liable because knowledge was not brought home to its employe?   We think not.

This, however, is not the question arising in this case. It is the mode of shipping and branding this naphtha adopted by both parties under an agreement or implied understanding, at least, between them, from which this liability to the employe springs, if any exists.   The railroad company had been in the habit of receiving and shipping this naphtha as carbon oil under an arrangement with the appellant, with a brand placed on the head of each barrel:   "Unsafe for illuminating purposes."

There was an implied, if not a positive, duty on the part of both corporations to notify those who handled this substance of its dangerous character, and no arrangement between them, although made in the best of faith, by which dynamite was to be shipped as powder or naphtha as carbon oil should protect the appellant from a violation

of this duty it owed to the hands or employes whose duty it was to keep it secure and to handle it when necessary. The freight bill or paper by which this plaintiff was guided showed that it was oil or carbon oil, and it seems to us the only question for the jury to decide is: Was the brand on these barrels sufficient notice to the appellant of the dangerous substance within them? The dangerous quality of naphtha requires more vigilance and care in shipping and handling it than almost any other explosive substance, and as a means of great precaution it would be prudent to give other warning than the mere name of the substance.

As an explosive it is said the danger is ten times greater than that of gun-powder; it ignites as soon as the blaze is applied to it and becomes explosive when the vapor from it mingles with the atmosphere in which there happens to be a burning lamp or other light. The conductor might not have known the danger if the word naphtha had been placed on these barrels; still, it would doubtless have put him on inquiry, and that it was not carbon oil, and at the same time removed all question of negligence from the door of the appellant. The contention by counsel is that the brand "Unsafe for illuminating purposes" was intended by the statute as the warning to be given those who handle naphtha. Whether this provision of the statute applies to naphtha or to the production from petroleum, less dangerous and known as oil, is uncertain; and it is manifest that the car purporting to be loaded with carbon oil from the freight bill did not apprise the appellee of the danger. While the testimony of the agreement between the two corporations as to the manner of shipping should have gone to the jury to show an ab-

sence of bad faith on the part of the appellant, still it was its duty, looking to the very great danger connected with the movement of such a substance on trains, to have so branded the barrels as to have informed the conductor of the inflammable character of the substance they contained; and unless they were so marked as that one exercising ordinary care and prudence with reference to his own personal safety and whose duty it was to handle the barrels should have ascertained the danger the appellant is liable. The converse of the proposition being that if so branded as that one of ordinary care and prudence should have discovered the danger, the verdict should be for the defendant. While the instructions given by the court below embrace this view of the case this is the issue to be tried.

The appellee had to deal with and deliver this naphtha, and he should have been informed in some way that the barrels contained it.

There are other questions raised as to the admission and rejection of testimony. It was shown that the appellee had a wife and child, over the objections of the appellant. While this fact may not have influenced the finding it should not have been admitted.

The defense offered to prove that the Louisville & Nashville Railroad Company, whose conductor the plaintiff was, had been informed that the words carbon oil contained in the bill of lading meant naphtha. This was refused, and properly, because an employe of even more than ordinary intelligence would not have attached such a meaning to this bill of lading. The court, however, should have admitted the testimony showing that wooden barrels were safe, and that naphtha was ordinarily shipped in that way by prudent business-men.

Another error complained of by the appellant is in the trial court permitting the appellee to prove that after this accident both corporations changed the manner of branding the barrels and labeling the cars. There seems to be some diversity of opinion on this point, the weight of authority being opposed to the admission of this character of testimony as a means of showing neglect on the part of the defendant. The Minnesota Court, in Moss v. Railroad Company, 30 Minn., 465, said: "We think such a rule puts an unfair interpretation upon human conduct, and virtually holds out an inducement for continued negligence."

In Lang v. Sawyer, 76 Wis., 71, in an action for an injury sustained by reason of defective machinery, the court held that it was erroneous to show that the defects were repaired after the accident.

In Terre Haute Railroad v. Clem, 123 Ind., 15, it is said: "To declare such evidence competent is to offer an inducement to omit the use of such care as new information may suggest, and to deter persons from doing what the new experience informs them may be done to prevent the possibility of future accidents."

Other cases determine that such evidence is open to the objection that it raises distinct and independent issues for the consideration of the jury. (Nalley v. Carpet Co., 51 Conn., 524; Payne v. Railroad Co., 9 Hun., 526; Ely v. Railway Co., 77 Mo., 34; Reed v. Railroad Co., 45 N. Y., 574.)

There is still another question in this case that every court of final resort approaches with reluctance, and that is the one of excessive damages. The verdict in this case is for twenty-five thousand dollars, the entire sum claimed

in the petition.  As said by Mr. Sedgwick, in his work
on the Measure of Damages : " It is one thing for a court
to administer its own measure of damages in a case prop-
erly before it, and quite another thing to set aside the
verdict of a jury merely because it exceeds that measure."
There must, says he, " be some mistake of the princi-
ples upon which the damages have been estimated, or
some improper motives or feelings or bias influencing
the jury." (Section 1320.)

It is not for this court to determine the amount the
plaintiff is entitled to recover in this character of action,
and the verdict in every case for an injury to the person
must depend upon the facts and circumstances connected
with the commission of the wrong in the particular case,
the verdict and judgment in no one case being a crite-
rion by which the court and jury are to be controlled in
all cases of a similar character.

It was the province of the jury to fix the compensation
to which the appellee was entitled, and the court in the
instructions given placed properly before them the mode
of ascertaining the damages if from the evidence the
appellee was entitled to recover.  The jury reached the
conclusion that the appellant was guilty of such an omis-
sion of duty as entitled the appellee to a verdict, but
was not authorized to increase the amount of recovery
by reason of any willful design on the part of the appel-
lant to injure the appellee.  The mode of ascertaining
the compensation to which the plaintiff was entitled is
found in instruction No. 11 given by the court.  The jury
was told that if they find for the plaintiff they will
give him such damages as they believe from the evidence
will fairly compensate him for any suffering, mental or

physical, heretofore experienced by him directly resulting from the injuries complained of, and for any suffering or disability that they may believe from the testimony is reasonably certain he will experience in the future as the direct and necessary result of said injuries, and for any reduction in his power to earn money in the future, if such reduction there be, directly resulting from the injury, not exceeding twenty-five thousand dollars claimed in the petition."

The appellee at the time of the injury was about thirty years of age, was a vigorous man and a laborious and useful conductor. His conduct at the time of the burning, as described by the witnesses, deserved the admiration of, and created a sympathy with, both judge and jury. His appearance before the jury after the injury, with a disfigured face and limbs as described in the testimony, doubtless excited a feeling with every juror, however honest, that drove them to fix the verdict beyond the proper limit of compensation.

We are to judge of this question by the light of the cases before us involving verdicts where compensation was the measure of damages, or even verdicts based upon the willful neglect of the defendant, and where punitive damages were sought and recovered. It is by comparison with verdict after verdict in this State, where more flagrant wrongs were committed and punitive damages claimed in which juries composed of men, as we have the right to assume, of like intelligence, passion and feeling, have made their findings for a much less amount; and without enumerating the cases it will be found that ten thousand dollars is the extent to which a verdict has been sustained by this court. Besides, in the case of

Louisville & Nashville R. Co. v. Fox, reported in 11 Bush, 495, where the verdict was for thirty thousand dollars, and set aside as excessive, most of the cases are referred to. While we do not pretend to adjudge that no verdict would or ought to be sustained for a larger amount than ten thousand dollars, we do say that some moderation should be indulged in when arriving at verdicts in this class of cases. As said by the court in Heddles v. Chicago Railway Co., 74 Wis., 239, where the injury resulted in the amputation of both legs of the plaintiff, and a verdict for thirty thousand dollars was set aside: "No rational being would change places with the injured man for an amount of gold that would fill the room of the court, yet no lawyer would contend that such is the legal measure of damages. Courts and juries must deal with such questions in a deliberate and practical sense." In our opinion the verdict in this case is excessive, and it is therefore reversed and cause remanded, with directions to set it aside and for proceedings consistent with this opinion.