TEXAS & P. RY. CO. v. CARLIN.

(Circuit Court of Appeals, Fifth Circuit. November 19, 1901.)

No. 1,048.

**1. TRIAL—DIRECTING VERDICT—QUESTION OF NEGLIGENCE.**

A question of negligence, dependent on evidence, is one of law for the court, only where there is no material conflict, and the facts are such that all reasonable men must draw the same conclusions from them. It is not the province of the court to weigh the evidence, and decide between conflicting statements of witnesses, or to decide what inference should be drawn from uncontradicted evidence, if different minds could fairly come to different conclusions from it.

**2. MASTER AND SERVANT—FELLOW SERVANTS—RAILROAD EMPLOYES UNDER TEXAS STATUTE.**

Under the statutes of Texas (Sayles' Ann. Civ. St. 1897, arts. 4560g, 4560h), which provide that all employés of a railroad company who are intrusted with authority of superintendence, control, or command of other servants or employés, or with authority to direct any other employé in the performance of any duty, are vice principals of the company, and not fellow servants of their co-employés, and that employés shall be considered fellow servants only when they "are in the same grade of employment, and are doing the same character of work or service, and are working together at the same time and place and at the same piece of work to a common purpose," the foreman in charge and control of a bridge gang on a railroad is not a fellow servant with a member of such gang, who under his orders is engaged in a separate piece of work, but is a vice principal, for whose negligence in the performance of his duty as foreman, resulting in an injury to his subordinate, the company is responsible.[1]

**3. NEGLIGENCE—ACTS CONSTITUTING—UNUSUAL CONSEQUENCES.**

The fact that an act of negligence produced an injury to another in a manner so unusual that it was not to be expected or anticipated does not relieve the party responsible from liability, when such act was one likely to cause injury in a way that might have been foreseen.

---

[1] Who are fellow servants, see notes to Railroad Co. v. Smith, 8 C. C. A. 668; Railway Co. v. Johnston, 9 C. C. A. 596; Flippin v. Kimball, 31 C. C. A. 286.

4. SAME—PROXIMATE CAUSE OF INJURY.

> One of a gang of workmen engaged in repairing a bridge on defendant's railroad left a heavy iron hammer or sledge with which he was driving spikes lying on the bridge. It was the duty of the foreman to see that all obstructions were removed from the bridge before the passing of any train. When a train approached the foreman was alone on the bridge near the place where the hammer lay, but he failed to see or to remove it, and it was struck by the train, and thrown some distance from the track, where it struck and severely injured plaintiff, who was one of the workmen. *Held* that, conceding the workman who left the hammer to have been negligent in so doing, his negligence was not the proximate cause of the injury, which was the negligence of the foreman in failing to see or remove it on the approach of the train.

In Error to the Circuit Court of the United States for the Northern District of Texas.

T. J. Freeman, F. B. Stanley, M. A. Spoonts, and George Thompson, for plaintiff in error.

E. C. Orrick and J. C. Terrell, Jr., for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is an action for damages for personal injuries, brought by Michael Carlin, plaintiff, against the Texas & Pacific Railway Company, defendant. The petition alleged that the plaintiff was in the employ of the defendant as a member of what is known as the "bridge gang," and, while at work near where a bridge was being repaired, a train approached with great speed, and as it ran over the bridge a spike maul or heavy iron hammer, weighing six or eight pounds, with a handle attached to it, was caught by the train, and thrown against the plaintiff, injuring his leg so that it had to be amputated. The negligence of the company was charged in several ways, one being that the foreman of the bridge gang had failed to see and remove the maul from the bridge. The defendant's answer contained a general denial, and a plea that, if there were negligence, it was that of a fellow servant of the plaintiff, for which the defendant was not liable, and that the plaintiff was guilty of contributory negligence. The case was tried on these issues, and there was a verdict for the plaintiff for $6,000 damages, on which judgment was entered. A bill of exceptions was reserved by the defendant, and the case is brought here on writ of error.

The plaintiff in error contends that the trial court should have directed a verdict for the defendant. Several of the assignments of error are dependent on that contention, and they are discussed together in the arguments submitted.

In every jury trial there is a preliminary question for the court. The court must determine whether or not there is sufficient evidence upon which the jury could base a verdict for the plaintiff. If there is no evidence, or if it is such that, on a fair construction, it does not sustain the plaintiff's case, and that no fair inference to be drawn from it sustains it, the court should give the peremptory instruction. There is no good sense in permitting a verdict that it would be the duty of the court to set aside. But it is not the province of the court

to weigh the evidence, and decide between conflicting statements of witnesses, or to decide what inference should be drawn from uncontradicted evidence, if different minds could fairly come to different conclusions from it. A question of negligence, dependent on evidence, should not be taken from the jury, except in cases where there is no material conflict, and where there is no room for different minds to draw different inferences from it. The question of negligence is one of law for the court, only when the facts are such that all reasonable men must draw the same conclusions from them. A case should not be withdrawn from the jury unless the conclusion follows as matter of law that no recovery can be had upon any view that can be properly taken of the facts the evidence tends to establish.

The plaintiff, Carlin, was one of several members of a bridge gang. Welsh was the foreman in charge and control of the gang. The foreman and gang had gone to the bridge on the defendant's railway to repair it. Ed. Carver, one of the gang, used an iron maul or hammer about ten inches long, weighing six or eight pounds, to drive spikes in the bridge. It had a wooden handle about three feet long. Welsh, the foreman, directed the plaintiff to sharpen a saw. Pursuing their work under the direction of the foreman, all the men left the bridge. Welsh alone remained on the bridge. It was his duty to see that the bridge was kept free from obstructions, so that trains could safely pass. Where Carver laid the maul when he left the bridge is not shown by direct evidence. Ten or fifteen minutes after he was using the maul, a train approached rapidly, and crossed the bridge. Welsh says he looked on the bridge, and saw no obstruction; that he did not see the maul. He stepped out of the way of the passing train. As the train passed, the plaintiff, who was more than 20 feet from the track, was seen to fall. His leg was broken so as to require amputation. Lying near him was the iron maul, with the handle freshly broken. The conclusion is irresistible that the cars in passing had struck the maul, breaking the handle, and hurling it against him.

One of the averments of negligence in the petition is that the company was negligent, in that Welsh, the foreman of the bridge gang, failed to see that the bridge was clear of obstructions, and in failing to detect the maul on the bridge, and in leaving it there to obstruct the bridge.

In the absence of a controlling statute, it may be conceded that Welsh, the foreman, and the plaintiff, a member of the bridge gang, would have been fellow servants, and Carlin would have had no cause of action against the company. McDonald v. Buckley (C. C. A.) 109 Fed. 290; Railroad Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181. But there are statutes in Texas applicable to the case. By these statutes, in a case like this, a servant or employé, who has the authority to direct any other employé in the performance of any duty of such employé, is a vice principal, and not a fellow servant. By the express terms of the statute, employés are not considered fellow servants unless they "are in the same grade of employment, and are doing the same character of work or service, and are working

together at the same time and place and at the same piece of work and to a common purpose." Sayles' Ann. Civ. St. Tex. 1897, arts. 4560f-4560h. The statutes are printed in the margin.[1]

It is clear on the proof that Welsh was in control and command of the plaintiff, and that they were not in the same grade of employment, nor at the time of the accident were they doing the same character of work or service. Under the Texas statute, according to its letter, or as construed by the Texas supreme court, they were not fellow servants. Long v. Railroad Co. (Tex. Sup.) 57 S. W. 802; Nix v. Railway Co. (Tex. Sup.) 18 S. W. 571. We must be controlled by these statutes and their construction by the Texas supreme court. Rev. St. U. S. § 721; Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772. It follows that the company would be responsible to the plaintiff if he received the injuries from the negligence of Welsh.

The contention for the peremptory charge must be and is based on the idea that there is no proof of negligence on the part of Welsh. There is no conflict in the evidence that it was Welsh's duty to see that the bridge was not obstructed. He says he looked, and saw no obstruction. It is claimed that there is no evidence as to the location of the maul when the train reached the bridge; that there is no proof that it was in sight; that, if Carver had placed it where Welsh could not have seen it, it was not negligence in Welsh to fail to see and remove it. Negligence, like any other fact, may be proved by circumstantial evidence. The indisputable fact that the cars struck the maul, and hurled it so that it struck the plaintiff, shows that the maul lay where the cars could strike it. Welsh was alone on the bridge as the train approached. It was proved that the surface of the bridge was plain,—made with the cross-ties about 18 inches apart, on which were the rails and the guard rails, with nothing on them or near them

[1] "Art. 4560f. Every person, receiver, or corporation operating a railroad or street railway, the line of which shall be situated in whole or in part in this state, shall be liable for all damages sustained by any servant or employé thereof while engaged in the work of operating the cars, locomotives or trains of such person, receiver or corporation, by reason of the negligence of any other servant or employé of such person, receiver or corporation; and the fact that such servants or employés were fellow servants with each other shall not impair or destroy such liability.

"Art. 4560g. All persons engaged in the service of any person, receiver or corporation, controlling or operating a railroad or street railway, the lines of which shall be situated in whole or in part in this state, who are intrusted by such person, receiver or corporation with the authority of superintendence, control or command of other servants or employés of such person, receiver or corporation, or with the authority to direct any other employé in the performance of any duty of such employé, are vice-principals of such person, receiver or corporation, and are not fellow servants with their co-employés.

"Art. 4560h. All persons who are engaged in the common service of such person, receiver, or corporation, controlling or operating a railroad or street railway, and who while so employed are in the same grade of employment, and are doing the same character of work or service, and are working together at the same time and place and at the same piece of work and to a common purpose, are fellow servants with each other. Employés who do not come within the provisions of this article shall not be considered fellow servants." Sayles' Ann. Civ. St. Tex. 1897, arts. 4560f–4560h.

to cover or hide the maul. When the evidence shows that the cars struck the maul on the bridge so constructed, is not that a fact from which the jury might infer that it was lying in plain view, near the rail? If such inference be not unreasonable, the question was one for the jury.

We cannot adopt the suggestion or intimation that in cases like this, owing to the alleged inclination of juries to find against corporations, we should assume that the jury has been influenced otherwise than by a consideration of the evidence. To adopt the expression of a distinguished judge:

"We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these, as well as others." Jones v. Railroad Co., 128 U. S. 443. 9 Sup. Ct. 118, 32 L. Ed. 478.

It must be conceded that the injury for which the action is brought occurred in an extraordinary and unusual manner. Just such an occurrence was not to be anticipated. The defendant requested the trial judge to instruct the jury that, although they may find that the foreman failed to discover the maul, "yet, if you believe from the evidence that the result which followed from his failure to discover it was not such result as ought to have been foreseen in the light of the attending circumstances, then, in such event, the failure of the foreman to discover the proximity of the hammer would not be such negligence as would make the defendant liable, and you must find for the defendant." The court did not err in refusing to adopt this view of the case. It may be true that the accident in its extraordinary form, with its peculiar circumstances, could not have been expected to happen from the maul being left on the bridge near the rail, yet the act of permitting it to remain there was none the less negligent, for it threatened danger in many directions. It was liable to produce familiar results, which would cause serious injury. The fact that it happened to cause the injury in a manner so unusual that it was not to be expected cannot prevent the act from being negligent when it was likely to cause injury in a way that might be foreseen. It may be true that the negligence in this case produced an effect not before observed, the circumstances of which could not have been anticipated. But, if it was negligence likely to produce other and familiar injuries, the peculiarity of the accident does not prevent liability. Doyle v. Railway Co. (Iowa) 42 N. W. 555, 4 L. R. A. 420. The extraordinary circumstances attending the injury cannot serve as a defense. To so hold would be to say that a plaintiff must show similar injuries to have occurred in the same manner before he could recover. And it would lead to the anomalous result that for the first, and perhaps the second, injury occurring in such manner there could be no recovery; but for the third, or when the circumstances ceased to be peculiar or became familiar, the defendant would be liable.

It is contended that, if Ed. Carver left the maul close to the rail or track, this act of Carver's was the direct or proximate cause of the injury. It is true that, if the maul had not been placed near the rail, Carlin would not have been injured. But we do not think that this act of Carver's, conceding it to be proved, constituted the proximate

cause of the injury. When he finished driving the spikes with the maul he would be expected to lay it down. The tools of the workmen, and the material in use to repair the bridge, could only be rightfully on the bridge and on the track when no train was to pass. Sometimes they would necessarily be left for a short time on the bridge. They could be there without negligence on some occasions. It would, of course, be negligence to leave them on the track for a train to run over them. The fact that they were so placed on the track, the men negligently leaving them there, could not make it the less negligent for the foreman to fail to perform his duty to remove them or cause them to be removed. To illustrate: The gang might remove a defective rail on a bridge to put in a new one. If the foreman failed to put out a flag, or to use or cause to be used other means to stop the train coming on the bridge while the rail was off,—that being his duty,—and an accident occurred, it could not be said that the act of the gang in removing the rail was the proximate cause of the accident. The proximate cause of the accident would be the failure of the foreman to stop the train. Placing the maul on the bridge may have been an innocent act connected with its use. It may be conceded that Carver was negligent to leave it there. The fact, not disputed in evidence, that the duty was imposed on the foreman to see that the bridge was kept free from obstructions, shows that it was deemed unsafe by the company to rely alone on the men to voluntarily keep it free. Conceding the negligence of Carver, could that excuse or relieve Welsh from the performance of his duty? He was left alone on the bridge, and, as the proof tends to show, near the maul, when the train was approaching. He had time to remove it. If he negligently failed to see it, or, seeing it, failed to remove it, that was the negligence constituting the proximate cause of the accident. The preceding act of Carver could not relieve the company of its responsibility for Welsh's failure to perform his duty.

We have carefully examined all the assignments of error, and find no reversible error in the case. The judgment of the circuit court is affirmed.

