WILLIAM M. GIBSON, Appellant, v. W. H. TORBERT.

Sale of Phosphorus:   NECESSITY FOR SPECIFIC WARNING TO BUYER. Plaintiff, who was a poorly educated man, ordered a quantity of phosphorus of defendant, a druggist. Defendant sent three

sticks, properly packed in water and labeled. Plaintiff removed the phosphorus from the package, and dropped one stick, which ignited, and, on his attempting to pick it up, caused the explosion of the remaining sticks in plaintiff's hands, injuring him severly. *Held*, that the article ordered was not such a new and unknown substance, with the dangerous qualities of which the general public and, therefore, the plaintiff, was not acquainted, as to render defendant negligent in selling it without specific warning.

ILLITERACY OF BUYER: *Affecting ordinary care on part of seller.* The fact that the letter ordering the phosphorus was badly spelled, incorrectly capitalized, and ungrammatical did not show such unfamiliarity with the nature of the drug on the part of the writer as to render defendant wanting in ordinary care in sending the article without warning as to its dangerous properties.

*Appeal from Dubuque District Court.*—HON. FRED O'DON-NELL, Judge.

FRIDAY, DECEMBER 20, 1901.

ACTION at law to recover damages for a personal injury alleged to have been caused by the defendants negligence. A demurrer to the petition was sustained, and the plaintiff appeals.—*Affirmed.*

*Bowen, Brockett & Alberson* and *Longueville & Kintzinger* for appellant.

*Lacy & Brown* and *Henderson, Hurd, Lenehan & Kiesel* for appellee.

SHERWIN, J.   In his petition the plaintiff alleges: That he is a man of middle age and of very limited education, and that at the time of the transaction in question he was, and always had been, ignorant of the character and properties of phosphorus.   That the defendant was a wholesale druggist, dealing in phosphorus, and possessed of scientific knowledge of, and was perfectly familiar with, its character and properties.   That said drug in its commercial form is but little used, and its nature and properties are not generally known to the public.   That

in such form it is a highly drastic, corrosive, and deadly poison, and is highly explosive and combustible, being liable at all times when removed from water, "to explosion and spontaneous combustion, either by ignition from contact with fire, by the application of force, or from chemical changes effected by contact with air." That in fact it is a "most dangerous and deadly nuisance," "That having heard that said drug was employed by actors and stage managers as a harmless illuminant, and desiring to know more about it," he sent an order in writing to the defendant "for a small quantity thereof," in words and figures as follows: "Iowa Falls, —4—3—97. W. H. Torbert Dubuque, Iowa. Dear Sur, Mr. Swortz Gave me your Address and advised me To Rite to you and that you would send me what I wanted as he had not Got it Will you Please send me 50c worth of Phos Phorus By express to Colect on Delever and if it works as I Think it will Thare will Bee A Big Demand for it Let me Know Pleas if you Have not got it whare I can Get it By Return male your Truley W. M. Gibson, Iowa Falls Iowa." That said letter was in his own handwriting, and was poorly written with lead pencil. That in response thereto the defendant caused a glass bottle "containing three sticks of phosphorus immersed in water to be shipped by express to plaintiff, labeled "Phosphorus," but without any other written directions or warning whatsoever accompanying it. That after receiving the package he removed the phosphorus from the bottle, and proceeded to examine and handle the same. "That, while holding two of said bars in his hands, by accident one of the bars slipped from his hand and fell upon the carpet of the floor in his home." That, "on stooping to pick it up, it exploded, scattering spray and molten quantities of its substance upon his hand, which instantly burned, and at the same ignited and exploded the bar which was being held in his other hand." "That defendant was fully aware of all said danger; that there was constantly an imminent probability that said drug would act

as herein explained, under similar circumstances; and that such facts, and all its dangers, were unknown to the general public, and probably unknown to plaintiff."

An exhaustive research by the able counsel representing both sides of this case has failed to find in the textbooks or in the adjudicated cases a case presenting facts exactly parellel to those in the case at bar. This action is not based upon the statute (section 2593, Code) which requires the labeling of certain drugs when sold; for phosphorus is not one of the drugs therein mentioned. It is a common-law action, alleging negligence in selling and delivering to a customer in the usual course of trade the identical thing ordered, properly labeled, without informing such customer of the dangerous properties of the substance so ordered and delivered. The cases cited pro and con furnish but little assistance in determining the question before us, for the reason that they were all decided on a different set of facts. They all recognize the general rule that where one person owes a legal duty to another, and fails to perform it, he is liable for the damage resulting proximately from his failure. We cannot notice in detail all of the authorities cited in support of the plaintiff's contention, but give the gist of the matter in each case. In *Osborne v. McMaslers,* 40 Minn. 103 (11 N. W. Rep. 543, 12 Am. St. Rep. 698), a druggist's clerk sold a deadly poison without labeling it "Poison," as required by the statute. It is held that the proprietor was liable, both under the statute and at common law; but it does not appear from the opinion whether there was a mistake in filling the prescription or not. *Crowhurst v. Board,* 4 Exch. Div. 5, is a case where a poisonous tree was permitted to grow in a cemetery, so that its branches extended over the fence into plaintiff's pasture, and "his horse ate of it and died." The defendants were held liable. *Kennedy v. Ryall,* 67 N. Y. 379, is a case where a ship was fumigated, and a portion of the substance used therefor (a deadly poison) left where it was afterwards found and drank

by a small child, resulting in its death. The master of the ship was held liable. *Elkins v. McKean,* 79 Pa. St. 493, is a case in which the manufacturers of illuminating oil branded it as bearing a fire test of 110°, when in fact it only tested 64° or 65°. In *Carter v. Towne,* 98 Mass. 567 (96 Am. Dec. 682), gunpowder was sold to an 8 year old boy. And in *Dixon v. Bell,* 5 Maule & S. 198, a loaded gun was given to a girl 13 or 14 year old and while in her hands it was discharged, injuring another. In *Schubert v. J. A. Clark Co.,* 49 Minn. 331 (51 N. W. Rep. 1103, 15 L. R. A. 818, 32 Am. St. Rep. 559), the plaintiff was injured by the breaking of a stepladder upon which he was standing while at work. The ladder was constructed of rotten wood, which was concealed by paint and varnish. *Thomas v. Winchester,* 6 N. Y. 397 (57 Am. Dec. 455), is an early case in this country, and is often cited, but it is a case in which a poisonous drug was falsely labeled. In *Wellington v. Oil Co.,* 104 Mass. 64, the defendant sold dangerous oil, not safe for illuminating purposes, to a customer whom it knew had no knowledge of its dangerous character, and intended to sell it for illuminating purposes. *Bishop v. Weber,* 139 Mass. 411 (1 N. E. Rep. 154, 52 Am. Rep. 715), is a case where unwholesome food was sold. And *Davis v. Guarnieri,* 45 Ohio, 470 (15 N. E. Rep. 361, 4 Am. St. Rep. 548), *Fleet v. Hollenkemp,* 13 B. Monroe, 219 (56 Am. Dec. 563), and *Brown v. Marshall,* 47 Mich. 576 (11 N. W. Rep. 392, 41 Am. Rep. 728), are all cases in which mistakes were made in putting up medicine. *Standard Oil Co. v. Tierney,* 92 Ky. 367 (17 S. W. Rep. 1025, 14 L. R. A. 677, 36 Am. St. Rep. 595), is a case where the company shipped naphtha over a railroad; the barrels being marked, simply, "Unsafe for illuminating purposes," while the waybill stated that it was "carbon oil." The conductor in charge of the train was injured by an explosion of the naphtha, and was allowed to recover. See, also, *Craft v. Parker, Webb & Co.,* 96 Mich. 245 (21 L. R. A., note page 139 (s. c. 55 N. W. Rep.

812). In some of the cases cited, language is used which is broader than the particular case under consideration called for, and which at first glance might be thought to support the plaintiff's contention in this case; but, as we have said, an examination of the cases themselves shows that such language is only general and not entitled to controlling weight as authority in this case. *Boston & Albany Railroad Co. v. Shanly,* 107 Mass. 568, though not cited by counsel, is a case in which gunpowder manufacturers shipped over the plaintiff's road what was alleged to be a "new, dangerous, explosive, combustible, and imflammable compound, recently discovered and manufactured, called by a new name, not generally known, now new in the market, and the qualities were and are not generally known, made in part of nitroglycerine, itself an exceedingly dangerous explosive and combustible substance." This substance was shipped as "Dualin," and it was alleged in the declaration that not only was the plaintiff railroad company not notified of its dangerous character, but, on the contrary, it was assured that it was safe, and not of a dangerous nature. A demurrer to the declaration on the ground that it did not state a cause of action was overruled. It is well to notice here that the declaration charged that the substance was new, with a new name; that it was recently placed on the market; and that the plaintiff was informed that it was safe, and not of a dangerous character,—averments not to be found in the petition in the case at bar. We believe that the true rule deducible from reason and from authorities is that when a person has reached the age of discretion, and who is apparently in the possession of his mental faculties, applies to a druggist for a certain drug, he represents to the dealer, by implication, at least, that he knows its properties and uses, and that he is a fit person to whom sale thereof may be made, and that unless there is something connected with the transaction, or something previously known to the seller, indicating that the would-be purchaser

cannot safely be intrusted with the substance, a sale of the substance called for may be made without explaining its properties or the manner in which it may be safely used or handled, and that, under such circumstances, the seller is not liable in damages for injuries to the purchaser resulting from the improper use or handling of the article, no matter how little knowledge the purchaser may in fact have had of its properties, or of the manner in which it could not be safely used or handled. It appears clear to us that the vender's legal duty to such a purchaser can go no further than to give him the identical substance he calls for. Let us now apply this rule to the facts in this case. Phosphorus is one of the elements of matter that was discovered more than 200 years ago,—in fact, its illuminating properties were discovered as early as 1680; and it has been used for different purposes to a limited extent, ever since its discovery. Since 1835 its principal use has been in the manufacture of matches. For years this latter use has been a matter of common knowledge to children, even; and there are but few adults of ordinary observation or intelligence who are not familiar with this use, and its peculiar quality of emitting light. It is also generally known to be a deadly poison when taken internally. It is contended, however, that the plaintiff's letter ordering phosphorus is so illiterate that it alone would convey to a man of ordinary care information that the plaintiff was not a suitable person to intrust with the drug without specific warning as to its dangerous properties; but we cannot accept this construction of the letter, nor the inference sought to be drawn therefrom. On the contrary, we think the letter itself, with all its indications of illiteracy, was an assurance to the defendant, to a certain extent, at least, that the writer knew the substance he was ordering. It will not do to say that a man who may not be able to correctly compose or to correctly spell, or whose writing is poor,

is unfit to be intrusted with dangerous substances; for some, at least, of the great inventive geniuses of the world have been deficient in all of these respects.

The claim that the demurrer was improperly sustained, because the letter should have been left for the construction of a jury, we cannot assent to, because we are of opinion that the court should say, as a matter of law, that it does not disclose facts which would require the defendant to explain to the plaintiff in detail the properties of phosphorus.

It is questionable whether the petition sufficiently charges the defendant with knowledge of the plaintiff's ignorance of the dangerous nature of phosphorus, and a demurrer only admits matter well pleaded; but, even if there were no doubt on this matter, we would not reverse the case, because of our firm conviction that the plaintiff has no legal cause of action, taking his petition as a whole in connection with appellant's argument, which discloses that the only evidence of this fact is the inference which arises from the lack of public knowledge.

The judgment is AFFIRMED.