## E. I. DUPONT DE NEMOURS & CO. v. WRIGHT.

### No. 9818.

Circuit Court of Appeals, Sixth Circuit.

Dec. 7, 1944.

Rehearing Denied Jan. 22, 1945.

766

Robert T. McCracken, of Philadelphia, Pa., and Abel Klaw, of Wilmington, Del. (Robert T. McCracken, of Philadelphia, Pa., Abel Klaw, of Wilmington, Del., and Charles W. Milner and Bullitt & Middleton, all of Louisville, Ky., on the brief), for appellant.

J. Verser Conner, of Louisville, Ky., for appellee.

Before SIMONS, ALLEN, and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The accident which caused the death of the appellee's decedent was the result of the rupture and subsequent ignition of a drum of nitro-cellulose manufactured by the appellant and shipped by it to the Jones-Dabney Company, a lacquer manufacturer, in Louisville, Kentucky. The decedent was an employee of the consignee, and the consignor appeals from a judgment for the decedent's administratrix on ground that it was not negligent and, in the alternative, if negligence was proved it was not the proximate cause of the death, the chain of causation being broken by the independent intervening negligence of the consignee.

Nitro-cellulose is not, strictly speaking, an explosive, though it is highly inflammable. When wet it cannot be set off by concussion. The container here involved was moistened with a 30% solution of alcohol which, while it is sufficient to prevent detonation, increases the fire hazard. The shipment containing the destroyed drum, arrived at the Jones-Dabney plant by rail, in a sealed car. Upon arrival the drums were shunted to the ground upon a wooden slide with steel rails. The drum which failed was then pushed across a concrete pavement and skidded down a concrete chute with a drop of 3½ feet in a length of 14½ feet.

There is no dispute as to the physical causes of the accident. The experts agreed that the sliding of the steel drum upon the rough concrete surface of the ramp, caused a spark which ignited vapor released by a loosening of the head of the drum on the way down the ramp. The combustion was so violent that the drum was hurled 60 feet to where the decedent was in an elevator, and he received burns which shortly caused his death. Men on the ground outside the plant were knocked down, and a building some distance away was set on fire.

No question is raised as to the inherently dangerous character of nitro-cellulose, nor as to the obligation of the appellant to persons other than those in contractual relation with it, under the doctrine of MacPherson v. Buick Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, Ann.Cas. 1916C, 440, for lack of due care in its manufacture, packaging, and shipment. The appellant contends, however, that it was without fault in any respect. It shipped the material in a standard form of container, generally used by manufacturers of nitro-cellulose for shipment to Europe under the lend-lease agreement, and approved for that purpose by the Bureau of Explosives of the Interstate Commerce Commission. The car containing the shipment was marked with four red and white placards, one on each end and one on each of the side doors of the car, with words in large red letters, "Dangerous," "Highly Inflammable," "Keep Lights and Fire Away." The placards also contained in large letters the injunction, "Handle Care-

fully." On each drum was pasted a sign reading "Nitro-Cellulose," "Caution, Do Not Use Near an Open Flame or Fire." The appellant also points out that there was no proof of any infirmity in the drum, nor proof that the nitro-cellulose was improperly manufactured or packed. It therefore urges that there was a total absence of proof of negligence.

On the other hand, the record discloses that the Jones-Dabney Company had been using nitro-cellulose in the manufacture of its lacquer ever since 1925, and had purchased a large part of its supply from the appellant, though none for a year or two before the accident. In previous purchases the nitro-cellulose had been shipped in 14-gauge galvanized drums which were always returned to the shipper and re-used hundreds or more of times; that previous shipments had always been handled, upon arrival, in the identical manner of the present shipment; that this shipment was contained in 18-gauge black painted steel drums which were to be used only once. The black drums had little more than half the weight of the galvanized drums, and being protected only by a coating of paint would generate a spark when slid over a rough surface. It is therefore the contention of the appellee that in addition to the customary warnings of the dangerous and highly inflammable character of the shipment, the consignee should have been given warning that the new drums were less sturdy than the old and that they could not be handled as roughly; that the failure of the appellant to give such warning constituted actionable negligence.

 There was evidence from which the jury could have found that the black drum was not a standard container for nitro-cellulose in the domestic lacquer trade, several lacquer manufacturers testifying that they had never seen any but the heavy galvanized drums used for this purpose; that the black drum is less sturdy than the galvanized, and more likely to permit an escape of inflammable vapors. There was also evidence that it was safe to skid the galvanized drum on concrete and that such skidding was practical and necessary, and conformed to the usual practice of all Louisville lacquer manufacturers. The evidence justified an inference that the appellant knew, or should have known, that its consignee followed common practice of skidding the drums at its plant, and that the appellant knew that its consignee had never before received shipments of nitro-cellulose from it except in heavy galvanized iron drums. There was also evidence that the appellant was the only manufacturer of nitro-cellulose which used the lighter black drums in the domestic trade. The warning placards, while they apprised the consignee of the dangerous and highly inflammable character of nitro-cellulose when its vapors were exposed to flame, gave no notice to the consignee of the weaker character of the black drum, nor of its tendency to spark upon friction with hard rough surfaces. This, we think, raised an issue of fact for the jury with respect to negligence, and we find no error in the denial of a motion for directed verdict upon that ground.

 The usual test for determining causal relation between some failure of duty and an injurious result which follows. is the foreseeability of injury by the alleged negligent actor. Pease v. Sinclair Refining Co., 2 Cir., 104 F.2d 183, 123 A. L.R. 933; Standard Oil Co. v. Tierney, 92 Ky. 367, 17 S.W. 1025, 14 L.R.A. 677, 36 Am.St.Rep. 595; Snydor v. Arnold, 122 Ky. 557, 92 S.W. 289; Louisville Home Telephone Co. v. Gasper, 123 Ky. 128, 93 S. W. 1057, 9 L.R.A.,N.S., 548. In Johnson v. Kosmos Portland Cement Co., 6 Cir., 64 F.2d 193, we had occasion to give painstaking study to the considerations upon which the doctrine of proximate cause rests, as its development stemmed from the leading case of Milwaukee, etc., Ry. v. Kellogg, 94 U.S. 469, 474, 24 L.Ed. 256. We arrived at the conclusion that while the fact that injury is the natural consequence of negligence, may not of itself be sufficient upon which to base liability, yet where the injury could reasonably have been foreseen in the light of attending circumstances liability follows, and it is not necessary that the alleged negligent actor should have foreseen the precise manner in which the injurious result was brought about, if a generally injurious result should have been foreseen as reasonably probable. This test is satisfied, in the present case, by evidence of the customary handling of drums of nitro-cellulose by the Jones-Dabney Company and other Louisville lacquer manufacturers, by the inability of the appellant's containers to withstand such handling, by knowledge, actual or constructive, of such weakness, and the danger inherent in usual unloading practices, and by the

failure to warn the consignee against such handling in its first experience with the new type container.

■ The appellant's argument that drums of like character had not before caused injury, must be rejected. While there is proof that much nitro-cellulose had been shipped abroad in similar containers, there is no proof that shipment in such containers had before been made to consignees accustomed to handling drums in the manner prevalent among lacquer manufacturers in the Louisville district. As we said in Johnson v. Kosmos Portland Cement Co., supra [64 F.2d 196], "It needs no illustration to demonstrate that danger may be present although injury has not yet occurred." See Texas & P. R. Co. v. Carlin, 5 Cir., 111 F. 777, 781, 60 L.R.A. 462. We thought the true rule to be that when the thing done produces immediate danger of injury and is a substantial factor in bringing it about, it is not necessary that the author of it should have had in mind the particular means by which the potential force he has created might be vitalized into injury. The cases cited supported the conclusion, as does the American Law Institute, Restatement of Torts, § 435, and Shearman & Redfield on Negligence, § 39. Kentucky law is likewise in accord. Kentucky Independent Oil Co. v. Schnitzler, 208 Ky. 507, 271 S.W. 570, 39 A.L.R. 979; Miles v. Southeastern Motor Truck Lines, 295 Ky. 156, 173 S.W.2d 990; Watson v. Kentucky & Indiana Bridge & R. Co., 137 Ky. 619, 126 S.W. 146, 129 S.W. 341; Whitman McNamara Tobacco Co. v. Wurm, 66 S.W. 609, 23 Ky.Law Rep. 2120.

Our conclusion is that the danger inherent in subjecting the appellant's black containers to the customary handling of drums of nitro-cellulose by lacquer manufacturers in the Louisville district, including their liability to spark when skidded, was foreseeable by the appellant, and so a direct causal relation existed between the failure to warn the consignee of such danger and the injury which followed, unbroken by any fault of the consignee in the handling because that, too, was foreseeable in the light of attendant circumstances.

■■ The court below refused to admit in evidence regulations of the Interstate Commerce Commission authorizing the use of the light steel drums for the transportation of explosives, and this is assigned as error warranting reversal of the judgment. It is difficult to perceive the materiality of this evidence since the charge of negligence is not based upon the use of containers inadequate for transporting nitro-cellulose. The essential claim of negligence is based upon failure to warn the consignee of the danger in rough handling of the containers after they were unloaded. True, it is, that the excluded evidence might, in some measure, have diluted the fault of the appellant in the minds of the jury, unless carefully confined by instructions that the safe character of the drums for purposes of transportation necessarily did not establish their safety in other aspects, and if the evidence had been admitted we may not presume that it would not have been so confined. There are cases which hold that Interstate Commerce rules are for the benefit of railroad employees and the public rather than for the protection of shipper and consignee, who know the contents of a shipment and whether danger is inherent in its transit. Davis v. A. F. Gossett & Sons, 30 Ga. App. 576, 118 S.E. 773, is illustrative of such cases. These aside, however, we are not persuaded that the exclusion of the regulations resulted in prejudice. The containers involved were repeatedly referred to in the evidence as I.C.C. 73-E. Whether or not the jury understood this reference to mean that they were authorized by the Interstate Commerce Commission, is unimportant since the testimony of Hunt, an inspector for the Bureau of Explosives of the Interstate Commerce Commission, made it quite clear that the container was authorized for purposes of transit as a single trip container. The regulations would have added nothing to this evidence, and if there was error in their exclusion, it was not prejudicial. Rule 61, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

■ Finally, the appellant complains that the jury should have been charged that if Wright's death resulted from one of two or more equally inferred causes, for one or more of which the defendant was not responsible, the verdict should have been for the defendant. Stone v. Von Noy R. News Co., 153 Ky. 240, 154 S.W. 1092; E. I. Dupont de Nemours Powder Co. v. Duboise, 5 Cir., 236 F. 690. We have had many occasions to apply the rule that evidence is not substantial to carry a plaintiff's burden of proof where the result is

to submit to a jury a mere choice of probabilities. This but permits them to conjecture or guess at the manner of an accident or the presence of negligence. Parker v. Gulf Refining Co., 6 Cir., 80 F. 2d 795; Toledo, etc., R. Co. v. Howe, 6 Cir., 191 F. 776, 782; Virginia & S. W. R. Co. v. Hawk, 6 Cir., 160 F. 348, 352; Davlin v. Henry Ford & Son, 6 Cir., 20 F.2d 317. It has no present application since there is no disagreement as to the manner of the accident nor the absence of notice as to danger in subjecting the new drums to the customary handling of the earlier type. The issues as to whether this constituted negligence and was the proximate cause of the accident, were clearly submitted to the jury by instructions of the court, to which no objection was made.

The judgment below is affirmed.

## On Petition for Rehearing.

PER CURIAM.

Upon consideration of the petition for rehearing filed by the appellant in the above-entitled cause, and upon further review of the record, the court concludes that its observations in the opinion that there was a general practice among lacquer manufacturers in the Louisville district, to skid drums of nitro-cellulose over rough concrete, is not sufficiently supported by the evidence, and such observations are withdrawn. It is further the view of the court that any implication in the opinion that there was a general practice to skid such drums down a concrete ramp, is not to be derived from the language of the opinion, and if so, any intention to raise such implication is denied. The court also is of the view that the statement in the opinion that the lighter form of container was limited to use by manufacturers of nitro-cellulose for shipment to Europe under the lend-lease agreement, and approved but for that purpose by the Bureau of Explosives of the Interstate Commerce Commission, implies a limitation on their use not warranted by the evidence, and that the reference to the use of such containers should have been broad enough to validate their use for transportation in domestic commerce.

Notwithstanding these amendments to the opinion we adhere to the view that when the appellant for the first time shipped nitro-cellulose to the Jones Dabney Company in the lighter form of container, its failure to notify its consignee that such containers could not be safely handled in the manner in which it was accustomed to handle the earlier galvanized drums, raised issues properly submitted to the jury as to whether such failure of notice constituted negligence, and whether, if so, such negligence was the proximate cause of the injury; wherefore, it is hereby ordered that the petition for rehearing is in all other respects denied.