CASE 72—PETITION ORDINARY—MAY 27.

# Louisville and Nashville Railroad Company v. Long.

### APPEAL FROM CARROLL CIRCUIT COURT.

1. RAILROADS—GROSS NEGLIGENCE AS TO PASSENGER.—The servants of a railroad company in charge of a mixed freight and passenger train were guilty of the grossest negligence in leaving the passenger car on the main track at a station without using proper care to flag an approaching freight train in time to avoid a collision.

2. A PASSENGER WAS NOT GUILTY OF CONTRIBUTORY NEGLIGENCE in entering the passenger car of such a train without notifying the conductor, although the car was fifty feet from the platform, the rules of the company requiring persons taking passage on such trains to get on from the road-bed, or wherever the convenience of those in charge

Louisville and Nashville Railroad Company v. Long.

of the train required, and such being the custom of passengers. Nor does the fact that the passengers other than plaintiff were warned of the danger, and succeeded in getting out of the car before the collision, show that plaintiff was guilty of contributory negligence in not doing so.

3. EXCESSIVE VERDICT.—Although the case was one for punitive damages, and the plaintiff, in addition to serious external cuts and bruises, received a shock which greatly affected her entire nervous system, yet as it does not satisfactorily appear that her injuries are permanent, a verdict for $26,000 appears to a rational mind at first blush to be excessive, and must, therefore, be set aside.

4. WILLFUL NEGLECT has no place in law except in actions for loss of life under section 3 of chapter 57, General Statutes; and in actions like this to recover damages for personal injuries not resulting in death, the word "willful" should not be used in the instructions in fixing the degree of neglect.

5. DAMAGES.—If defendant was guilty of gross neglect, both compensatory and punitive damages may be awarded.

WINSLOW & WINSLOW FOR APPELLANT.

1. The verdict is so excessive as to indicate passion or prejudice. (L. & N. R. Co. v. Fox, 11 Bush, 495; Standard Oil Co. v. Tierney, 92 Ky, 367; Louisville Southern R. Co. v. Minogue, 90 Ky., 369.)

As showing the largest amounts awarded in this State for personal injuries or death other than the cases cited above, the following cases are cited:

Turnpike Co. v. Stewart, 2 Met., 122, $4,000; L. & N. R. Co. v. Collins, 2 Duv., 114, $5,000; Lou. & Port. R. Co. v. Smith, 2 Duv., 560, $4,750; L. & N. R. Co. v. Bobinson, 4 Bush, 508, $5,000; L. & N. R. Co. v. Sickings, 5 Bush, 2, $10,000; Sherley v. Billings, 8 Bush, 150, $4,000; M. & L. R. Co. v. Herrick, 13 Bush, 126, $5,000; L., C. & L. R. Co v. Goetz's Adm'r, 79 Ky., 443, $4,500; McLeod, Rec'r, v. Ginther's Adm'r, 80 Ky., 401; L. & N. R. Co. v. McCoy, 81 Ky., $7,593.50; L., C. & L. R. Co. v. Gutenkuntz, 82 Ky., 435, $5,000; L. & N. R. Co. v. Brooks' Adm'r, 83 Ky., 131, $10,000; L. & N. R. Co. v. Moore, 83 Ky., 679, $9,000; S. C. & C. S. R. Co. v. Ware, 84 Ky., 275, $4,000; L. & N. R. Co. v. Brice, 84 Ky., 300. $5,000; C. P. R'y Co. v. Kuhn, 86 Ky., 579; L. & N. R Co. v. Mitchell, 87 Ky., 338, $10,000; K. C. R. Co. v. McMurtry, 3 Ky. Law Rep., 625, $8,000; L. & N. R. Co. v. Coleman's Adm'r, 86 Ky. 556, $3,000; L. & N. R. Co. v. Roberts, 10 Ky. Law Rep, 528, $10,500; L. & N. R. Co. v. Sheets, 11 Ky. Law Rep., 781, $4,000.)

2. The husband's negligence in placing the wife in a dangerous position will bar her recovery. (Shearman & Redfield on Negligence, 3rd ed., sec. 46; Carlisle v. Sheldon, 38 Vt., 440.)

Louisville and Nashville Railroad Company v. Long.

It is enough to defeat a recovery by plaintiff that the injury might. have been avoided by the exercise of ordinary care on her part.. (Shearman & Redfield on Negligence, secs. 34, 36; K. C. R. Co. v. Thomas' Adm'r, 79 Ky., 163.)

3. Willful neglect had no place in or connection with any cause of action. attempted to be set up in this action, and no attempt should have been made to define it. (Craddock v. L. & N. R. Co., 13 Ky. Law· Rep., 19.)

WM. LINDSAY ON SAME SIDE.

1. Additional case cited as to excessive damages: Furnish v. M. P. R. Co., 102 Mo., 438; s. c., 22 Am. St. Rep., 781.

2. The court erred in instructing the jury that if the neglect of defend-ant was gross they might find for defendant if the neglect of plain-tiff was also gross. If the plaintiff was guilty of neglect of any degree, but for which the injury would not have happened, the law was for the defendant, and the jury should have been so instructed.

3. It was error to instruct the jury as to willful neglect, as this is a case for personal injuries not resulting in death, and not controlled by the statute. (Craddock v. L. & N. R. Co., 13 Ky. Law Rep., 19.)

GAUNT & DOWNS FOR APPELLEES.

1. The verdict was not so excessive as to authorize the court to interfere. (Harrold v. New York Elevated R. Co., 24 Hun., 184; Duncan S. Walker v. The Erie Railway Co., 63 Barb., 260.)

Each case must depend on the facts and circumstances connected with the wrong in the particular case. (Standard Oil Co. v. Tierney, 92 Ky., 367.)

2. The absence of slight care in the management of a railroad train is gross negligence and will authorize the recovery of punitive dam-ages. (Maysville, &c., R. Co. v. Herrick, 13 Bush, 127; Philadelphia R. Co. v. Daly, 14 How. (U. S.), 486; Railroad Co. v. Aspell, 23 Pa., 147; Railroad Co. v. Kenwood, 21 Pa., 203; Choppin v. N. & C. R. Co., 17 La., 191.)

3. The record in this case shows no state of facts that authorized any in-struction on the question of contributory negligence.

J. A. DONALDSON FOR APPELLEES.

1. The power of appellate courts to set aside verdicts upon the ground they are excessive should be exercised only in extreme cases. (L. & N. R. Co. v. Mitchell, 87 Ky, 338.)

Cases approving large verdicts where the injuries were no greater than the injuries in this case, and where the suffering was not so great: Lake Shore & Mich. Southern R'y Co. v. Rosenwerg, 113 Pa. St., 544, $48,750; Fair v. L. & N. W. R. Co., 21 Law Times, 326, $26,-

Louisville and Nashville Railroad Company v. Long.

250; Choppin v. New Orleans & C. R. Co., 17 La. Ann., 19, $25,000; Shaw v. Boston & Worcester R. Co., 8 Gray, 45, $22,500; C. & N. W. R. Co. v. Jackson, 55 Ill., 492, $18,000; Caldwell v. N. J. Steamboat Co., 56 Barb., 426, $20,000; Harrold v. N. Y. Elevated R. Co., 24 Hun., 184, $30,000; Walker v. Erie & R. W. Co., 63 Barb., 260, $20,000.)

2. The court properly refused to instruct the jury that it was plaintiff's duty to exhibit her ticket before entering the caboose. The relation of carrier and passenger begins when a contract of carriage has been made or the passenger has entered upon any means of conveyance provided by the carrier    (2 Am. & Eng. Enc. of Law, p. 744.)

3. The ordinary negligence of the plaintiff will not exonerate the defendant when the injury was caused by the gross or willful negligence of defendant's servants. (L. & N. R. Co. v. Collins, 2 Duv., 116; L. & N. R. Co. v. Sickings, 5 Bush, 4; L. & N. R. Co. v. Filbern, 6 Bush, 575; L. C. & L. R. Co. v. Mahoney, 7 Bush, 239; P. & M. R. Co. v. Hoehl, 12 Bush, 43.)

4. If the plaintiff was guilty of any negligence, it was in her effort to escape from the imminent peril to which she was exposed by the negligence of defendant's servants, and such negligence will not bar a recovery. (2 Am. & Eng. Enc. of Law, 749; Hutchinson on Carriers, sec. 662.)

5. The definitions of gross and willful neglect were proper.  (L. & N. R. Co. v. McCoy, 81 Ky., 411.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The verdict and judgment in this case was for twenty-six thousand dollars.

In the month of June, in the year 1889, the appellee Nettie Long, the wife of her co-appellee Thomas Long, or her husband for her, purchased tickets for travel on appellant's cars from Eagle Station, where she lived, to Sanders' Station, on the same road, but a short distance below.   She entered with her husband and daughter the caboose that constituted a part of freight train No. 32.   This train was a local freight train, but was carrying passengers as a carrier under certain regulations by the company, from station to station, located between certain designated points on

the road. When the freight train reached Eagle Station, where the passengers entered the caboose, the conductor detached his engine from the caboose and a part of the cars, leaving them on the main track, and took the engine, with the cars attached to it, on the switch to unload some freight, or for some other purpose. The caboose seems to have been the only car designed for passengers on this train, and when the appellees entered, it was a distance of forty or fifty feet from the platform of the depot. The conductor of this combined freight and passenger train, knowing there was a through freight train coming after him, sent one of his men, or an employe, to flag any approaching train. It is shown that it was customary for the flagman to go a distance of near one thousand yards to flag coming trains, but in this case the proof conduces to show that the flagman went only about two hundred yards, and was then, from his movements, paying but little attention to his duties, and, on the trial of this case, seems not to have been present to aid in solving the mystery connected with the collision of this passenger train on the main track and the through freight train.

It may be assumed, from the testimony as to his conduct, that he neglected to flag the through train to slow up, and before they could slow up, or the brakemen properly apply the brakes, the caboose was run into and demolished by this through train. It is shown by the testimony of those in charge of the train that the whistle was blown at the proper time and place, signifying its approach, and that the accident resulted from a failure of the brakes,

for some cause, to work properly, as they approached the station. No reasonable explanation has been given of this sudden stubbornness on the part of the brakes at this particular place, having worked well during the entire trip until it neared this station, and it is therefore manifest that the flagman either failed to notify those on the through train to slow up, or that those in charge of it were so reckless as to continue the speed of the train until they saw the danger ahead, when it was too late to avert it; and we are inclined to conclude that the flagman failed to give the proper signal, and from that fact the injury resulted.

The caboose was left on the main track by the conductor, when he knew the freight train• was approaching, and knowing that fact, it was his duty to have exercised the highest degree of caution in notifying the through train that another was on the track. · That there was negligence on the part of these employes of the grossest degree, is evident from this record, and this conclusion is reached from the undisputed facts, looking alone to the testimony for the defense.

The appellee Mrs. Long was knocked out of the caboose, and found lying between the main track and the switch unconscious, and badly bruised about the head, neck and shoulders. She was confined to her bed for near four weeks, with her family physician attending her. Since that time he has not administered to her any medicine, or been applied to for relief from the pain she claims she is suffering. It is claimed that her kidneys are affected, with a constant

desire to urinate, and that the water flows from her involuntarily; that she is deaf, and one of her eyes affected by the injury. Her physicians, or those who have examined her, find no objective symptoms that would indicate permanent injury, and the weight of the testimony conduces to show that she has not received any lasting injury, or if not, her own family physician, as well as other eminent physicians and surgeons, are not able to say that she is permanently injured, but from careful examinations of her person are inclined, at least some of them, to the contrary opinion. That the shock was great, and her entire nervous system seriously affected, there can be no doubt, but that she is permanently injured this court is not authorized to say from the testimony before us.

The other passengers succeeded in leaving the caboose and escaping without material injury, and it is claimed that the appellee was guilty of contributory neglect in not leaving the car sooner, and of like neglect in going upon the caboose without first notifying the conductor, and at a point fifty feet from the depot platform. As to boarding the train from the platform, the rules of the company required the passengers to get on from the road-bed, or wherever the convenience of those in charge of the train required, and such was the custom when converting this caboose into a passenger car, for the passengers would all know that it would at times be difficult and subject the conductor of this local freight train to a great inconvenience, if required to have the caboose opposite the platform that passengers might enter. The appellee and her husband were doing

what the rules of the company expected of them, and in fact the appellee husband had been the depot agent at Eagle for many years, and was the agent when this collision took place.

We have given this record careful consideration, and find no evidence of contributory neglect on the part of either the appellee or her husband, and the issue in this case is as to the negligence of the defendant's employes—if merely ordinary, compensation was the measure of damages; if gross, the jury had the right to find punitive damages; and from the facts of the record, *as now presented*, the jury being authorized to find the highest degree of neglect, which was gross neglect, the only question before us is, were the damages excessive? And upon this branch of the case if no evidence had been adduced for the defense, when looking alone to the testimony of the appellees, and her family physician, the damages were greatly in excess of the sum the appellee was entitled to recover.

That Mrs. Long was an estimable woman, and at the time of the injury was in the prime and vigor of her womanhood, possessed of every attribute that endeared her to her family, her neighbors and her friends, is shown by the record, and as presented to this court in eloquent terms by counsel, and no doubt with much greater effect to the jury deciding this case. That the triers were honest, fair-minded men there can be no doubt, but when the wife of the neighbor, of the friend, of the countryman, proud of the lovely character pictured by counsel, has been placed in such imminent peril, and suffered so by

Vol. 94—27.

reason of the neglect of one that has no breath of life, except as imparted by the steam that moves it, human sympathy often controls the judgment, and justice is not measured out by verdicts and judgments, as it would be between neighbor and neighbor, when like neglect results in injury.

Nor would this or any other court confine jurors only to such verdicts as are usually rendered between others than corporations. Carriers of passengers owe to them a special duty, and that is to exercise the highest degree of care for the protection of their person from danger by the neglect of those in their employ. This duty should be exacted, and by the imposition by way of punishment when gross neglect appears. This, however, should be done in a rational way, and not, as has been before said in this court, by placing the juror in the position of the husband, whose wife has been injured, or that of the wife, and then asking the question, what sum of money would you take to have your wife placed in such peril, or so injured as that skilled surgeons could not say whether the injury was or not permanent.

The apprehension that serious results might follow would not be entertained by the true husband or wife for the value of the entire railroad; but this is not the way of ascertaining the damages, nor is there any fixed rule by which a court or jury can arrive at what is the sum the plaintiff is entitled to; for it is a character of case where the wrong can not be repaired by mere dollars and cents, or the damages sustained of a character that can be computed in that way. We

have been referred to several cases by counsel, where similar verdicts in amount have been sustained where the party injured was made a mental or physical wreck by the negligence of the defendant, but the facts of this case do not show such an injury.    There is but little contrariety of opinion with the physicians as to the result of the injuries, and all save one see nothing, after examining the plaintiff, that would indicate permanent disability.    In the case of Shaw v. The Boston and Worcester Railroad, reported in 8th Gray, 45, the injury was such that the wife lost her left arm and a part of the right hand.    Her right arm was broken so that it never united.    She could not feed or dress herself, with her health and memory much impaired, and other serious wounds upon her person. The character of the finding in cases like this is to be tested, at last, as to the amount, by the average verdicts in cases growing out of personal injuries, when we are considering the question of excessive damages, by looking to the findings of juries in the past, and their approval or disapproval by courts of last resort—such sums as are ordinarily awarded for such injuries; and when comparing these cases with the one before us, can it be said that the damages at first blush are far too much, and such as the mind, free from passion or prejudice, would say was excessive?    Taking, therefore, the verdicts in this State, without enumerating them, as found in reported cases, where the injury was as great or greater than here, and the largest verdict sustained is one for fifteen thousand dollars, and this was a case where both legs were amputated, and the neglect as great as in the

case before us. (Kentucky Central Railroad Co. v. Smith, &c., 93 Ky., 449.)

The damages and finding by juries in cases of willful neglect where death was the result of the injury have not exceeded this sum. These cases having been passed upon, during the existence of corporations for many years, conduce to show what courts and juries have considered as a reasonable sum to be awarded in this class of cases, the verdict in each case lessened or increased by the particular facts and circumstances surrounding it.

In the case of the Louisville Southern Railroad Co. v. Minogue, 90 Ky., 369, the plaintiff sustained external bruises and her nervous system was greatly shocked. She was confined in her bed for eight weeks, and since she left her bed had been unable to walk. The verdict was for ten thousand dollars. This court held the verdict excessive, because it was not shown with reasonable certainty that there was a permanent injury, the medical testimony being as unsatisfactory in that case as in the one before us. It is truly said that a court of last resort should be careful in interfering with the verdicts of juries in cases where the sum to be awarded in damages is within the discretion of the jury, even to the extent claimed by the plaintiff, but this discretion on the part of the jury must be a legal discretion, and in its exercise, if the damages are erroneous, and so appear to a rational mind at first blush, it is not only the right but the duty of the court to interfere and set the verdict aside.

We perceive no objection to the instructions, save

the word willful, in fixing the degree of neglect, has now no place in the law, and in fact has no place in this case, as the common law rule governed, and not that fixed by statute where death ensues.

The question, as already indicated, is, was the injury caused by the neglect of the appellee's employes when in the discharge of their duty? If so, was it ordinary or gross neglect? If the first, compensation is the measure of damages; if the last, both compensation and punitive damages may be awarded. On another trial contributory neglect may be shown, and we have only said that none appears from the facts as they are now presented.

Reversed and remanded for a new trial consistent with this opinion.