Cincinnati, &c., Railroad Company v. Palmer.

CASE 63—PETITION ORDINARY—DECEMBER 12.

# Cincinnati, &c., Railroad Company v. Palmer.

APPEAL FROM BOYLE CIRCUIT COURT

1. WILFUL NEGLECT.—In this action against a railroad company to recover damages for personal injuries not resulting in death it was error to the prejudice of plaintiff to give an instruction to the jury requiring them to believe defendant was guilty of "wilful" negligence in order to find for plaintiff.

2. FELLOW SERVANTS.—Where two servants are of the same rank and engaged in the same field of labor the master is not liable for an injury to one by the negligence of the other, even though the negligence be gross.

3. SAME.—Where two servants are engaged in the same field of labor, but are not of the same rank, the master is liable for an injury to the subordinate by the gross negligence of the superior, but not for an injury resulting from ordinary negligence.

4. SAME.—The engineer and the porter of a railroad train, both of whom have duties to perform in the making up of the train, are engaged in the same field of labor within the meaning of this rule, and, the engineer being superior in rank, the master is liable for an injury to the porter, resulting from his gross negligence, but not for an injury resulting from his ordinary negligence.

5. GROSS NEGLIGENCE INCORRECTLY DEFINED.—The court erred in instructing the jury that "gross negligence is equivalent to slight care only, or the absence of that degree of care which most men of prudent and careful habits or temperament would have exercised under the same or like circumstances to avoid injuring others." The latter clause is practically a definition of ordinary negligence.

6. ABSTRACT INSTRUCTION.—The court properly refused to give an instruction to the effect that the plaintiff, entering the service of the defendant, assumed the ordinary risks pertaining to such service, as this was simply the statement of an abstract principle, and would have been misleading.

C. B. SIMRALL FOR APPELLANT.

1. A peremptory instruction should have been given.

(a) It is manifest from the evidence that Palmer was not ordered to make the coupling. If, as he claims, it was not his duty

Cincinnati, &c., Railroad Company v. Palmer.

to make the coupling, and he did it without orders from his superiors, he was acting as a volunteer and can not recover. (Brice v. L. & N. R. Co., 10 Ky. Law Rep., 526; Hogan v. Northern Pac. R. Co., 53 Fed. Rep., 519.)

(b) If it was one of the duties of plaintiff to couple the train and he was injured while performing that duty, then there can be no recovery except for gross negligence, and there is no proof of such negligence. (L. & N. R. Co. v. Rains, 15 Ky. L. R., 423; N. N. & M. V. Co. v. Eifert, 15 Ky. L. R., 600; E. T., V. & G. R. Co. v. Campbell, 15 Ky. L. R., 813.)

(c) The burden is upon plaintiff to show negligence, and he must show the degree of negligence that will entitle him to recover. (Hughes v. C., N. O. & T. P. Ry. Co., 91 Ky., 526; Commonwealth v. Cozine, 10 Ky. L. R., 412.)

2. Wilful neglect is a statutory degree of neglect, and exists only in case of death. It was error to charge anything with reference to it in a case like the one at bar. (M. & L. R. Co. v. Herrick, 13 Bush, 122; Craddock v. L. & N. R. Co., 13 Ky. L. R., 18; Owen v. L. & N. R. Co., 87 Ky., 626; L. & N. R. Co. v. Wathen, 13 Ky. L. R., 460.)

3. The instruction defining gross negligence was erroneous. (Brenner &c., v. Renner, 6 Ky. L. R., 512; M. & L. R. Co. v. Herrick, 13 Ky. L. R., 122 at 127.)

4. Defendant was entitled to have the jury instructed that the plaintiff undertook all the risks and hazards ordinarily incident to or involved in the performance of the duties which his employment embraced. (L. C. & L. R. Co. v. Caven's adm'r, 9 Bush, 565; Fort Hill Stone Co. v. Orms' adm'r, 84 Ky., 183; Ray v. Jeffries, 86 Ky., 367.)

5. The defendant is entitled to an instruction that the burden of proof is upon plaintiff to show negligence. (Sackett on Instructions to Juries, 254.)

6. The verdict is not sustained by the evidence.

The plaintiff must be presumed to have notice of a danger which every one can see. (Mich. Cen. R. Co. v. Smithson, 45 Mich., 212; Cunningham v. S. M. & St. P. R. Co., 17 Fed. Rep., 882.)

ROBERT HARDING and R. J. BRECKINRIDGE for appellee.

1. The court properly left it to the jury to determine whether there was wilful negligence, and also whether appellee was ordered by the conductor to perform work for appellant outside of his employment.

2. Appellee is shown by the proof to have been ordered to perform an extra hazardous work not within the line of his employment, and appellant, in consequence thereof, is responsible for the injury inflicted. (2 Thompson on Negligence, 976, secs. 7, 21.)

3. The lower court should have permitted appellee to read to the witness, Newton Bell, his statement made upon the first trial of the case and which was contained in the bill of exceptions.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The appellee, Palmer, was an employe of the Cincinnati, New Orleans & Texas Pacific Railway Company. For an injury resulting in the amputation of his thumb, this action was brought to recover damages, alleging the injury was inflicted upon him by the gross and wilful carelessness of defendant in requiring him to perform the service of coupling the cars, and by its gross and willful carelessness and negligence in running the engine against the train, car or cars; that he was directed, required and compelled to perform such service by the defendant; that in the performance of such service he was inexperienced and unskilled, of which facts the conductor of the train was aware when he required and compelled the plaintiff to perform such service.

The plaintiff was porter on the train, which made a daily trip from Junction City, Kentucky, to Cincinnati, Ohio, and return. On returning to Junction City in the evening the train was made up for the trip on the following day. It was "made up" by taking the cars constituting the train from the main track, one at a time, and putting them on the siding or switch.

The yard engine was used for the purpose, and it was the duty of the night yard master, located at Junction City, and of the brakeman and the train porter of this train, to do the work essential to make up the train. The plaintiff was employed on a Saturday evening, made that day's trip, and on

returning to Junction City helped make up the train. He did the coupling. On Monday following he made that day's trip, again performing the service of coupling in making up the train. There were five cars in the train, and in making the coupling to the last car the injury was received. The conductor's duties ended on arriving at Junction City. It appears that the night yard master was not performing his duties, and the porter of the parlor car was assigned to his place during the "making up" of the train. The night yard master usually did the coupling in making up the train, the porter throwing the switch. A former porter on this train frequently did the coupling. In making up the train one of the employes unlocked the switch, one stood on the end of the car to operate the brakes and another of the crew did the coupling. On the occasion of the injury and the preceding Saturday the brakeman unlocked the switch, the parlor car porter operated the brakes and plaintiff did the coupling.

The plaintiff testified that the conductor ordered him, before arriving at Junction City, to help make up the train. This the conductor denies, claiming it was the porter's duty under his employment to aid in that work. Plaintiff does not testify that the conductor told him to do the coupling. The brakeman and the parlor car porter testified that the plaintiff was asked on each night which part of the service he would rather perform in "making up" the train, and that he chose to do the coupling. Plaintiff, while on the witness stand, does not deny this. The conductor offered Palmer the position of porter on the train and he said he would accept it.

The question arose as to whether he knew the duties of the position, and in his testimony Palmer said that "I told him I knew the duties of the porter on that train, and his

duties were to help the passengers on the cars, help take the baggage off, help cut the pipes between the cars and unlock the switch and the making up of the train."

Such witnesses as testified for the defendant said it was plaintiff's duty to help make up the train. Besides, the plaintiff admits that when he accepted the position he knew it was his duty to help make up the train.

It must stand from this record as an admitted fact that it was plaintiff's duty, under his employment, to help make up the train.

The plaintiff does not endeavor to show by his own or other testimony that the injury resulted from his inexperience or unskillfulness in coupling, but endeavors to show that the injury resulted from the negligence in the engineer in operating the engine. Neither did the defendant attempt to show the injury resulted from the inexperience or unskillfulness of the plaintiff. The plaintiff said that the engine came back so fast for the coupling to the mail coach that he stepped out from between the engine and the mail coach. The engine then backed, when the plaintiff signaled the engineer to return to make the coupling, which was done. The plaintiff describes the manner in which the accident occurred as follows: "I had the link attached to the engine in my hand, and was walking back with the engine toward the mail coach, holding the link in my hand, and when the engine got within a yard of the mail coach the engineer threw on the steam, and this pushed the engine back so fast that in trying to make the coupling my hand was caught and my thumb and a portion of my hand, right at the base of the thumb, was crushed. The engine struck the mail car so hard that it knocked it back again two or three feet. I walked back between the engine and the car with my hand fastened there."

On his cross-examination he said: "There was not time, after the engineer threw on steam, for me to have dropped the link and stepped out, and to have pulled my hand out be-fore the engine struck the mail coach. I could not have dropped the link and pulled my hand back, but I held it and tried to make the coupling. It missed the hole in the bumper—the link did—and my hand was caught."

The employes engaged in making up the train contra-dicted the plaintiff's material statements.

We think the testimony of the plaintiff was sufficient to allow the court to submit the questions to the jury, as there was evidence tending to prove the necessary allegations of the petition. Therefore, it follows that the court did not err in refusing a peremptory instruction.

The court gave the jury six instructions. They were in substance or literally, as they are made to appear, as follows:

1st. That if plaintiff received the injury by the *willful* or gross negligence of the defendant's engineer in running back to make a coupling, plaintiff was entitled to recover damages and the jury, in their discretion, could "find additionally such damages as will be punishment to defendant for a wrongful act intentionally done."

2d. Was a definition of willful negligence.

3d. "Gross negligence, as applicable to this case, is equivalent to slight care only, or the absence of that degree of care which most men of prudent and careful habits or temperament would have exercised under the same or like circumstances to avoid injuring others."

4th. The jury was told to find for the defendant if plaintiff's negligence contributed to the infliction of the injury in such a degree as that it would not have occurred without it.

5th. "There is yet another state of case upon which, if you be-

lieve from the evidence it exists, you may find for the plaintiff simply compensatory damages without holding him to *proof of either willful or gross negligence*, and that is this: If you believe from the evidence that making up of this train was not one of the duties of plaintiff under the terms of his original employment, and also that he was ordered by the conductor of the train to assist in making up the train, and in addition that the engineer was guilty of negligence in the way or manner of his backing the engine to make the coupling, and that this negligence caused the injury, then you will find for plaintiff such damages as you believe from the evidence will fairly compensate him.   *   *   If you believe from the evidence that assisting in making up the train was one of the duties of plaintiff by the terms of his original employment, or, although not one of his duties, if you believe from the evidence that the choice was offered him to do this or another duty, and that he voluntarily chose to do this; or if you believe from the evidence that in his effort to make the coupling he was guilty of contributory negligence defined in instruction No.,4, then you can not find anything for him on the ground of the negligence of defendant, defined in this instruction."

The first instruction submitted to the jury the question as to whether the injury was inflicted by gross or willful negligence. This instruction required the plaintiff to show a greater degree of negligence than is required by the law in this class of cases. This court in many cases has held that "willful" negligence only applies to cases where death results. When death does not result, the common law rule governs. (Maysville & Lexington R. Co. v. Herrick, 13 Bush, 127; Louisville & Nashville R. Co. v. Long, 94 Ky., 410; Craddock v. Louisville & Nashville R. Co., 13 Ky. Law Rep., 18.)

The first instruction being erroneous and prejudicial to the appellee, it follows that the instruction defining willful negligence should not have been given. These were errors prejudicial to the rights of appellee, and would not entitle appellant to a reversal.

The fifth instruction told the jury that they were author·ized to find compensatory damages, without proof of either willful or gross negligence, if the engineer was guilty of neg· ligence in the way or manner of backing the engine, and that such negligence caused the injury.

Under this instruction the jury could find compensatory damages without believing the appellant was guilty of gross negligence. The engineer and the porter were not fellow servants, no more than are the engineer and the brakeman. This court has held that an engineer and brakeman are not fellow servants. (Louisville & Nashville R. Co. v. Moore, 83 Ky., 675; Louisville & Nashville R. Co. v. Brooks' adm'r, 83 Ky., 129.)

Where servants are of the same rank and engaged in the same field of labor, the master is not even responsible for the gross negligence of a fellow servant. (Volz v. Chesapeake, &c., R. Co., 95 Ky., 188.)

The master is responsible for the gross negligence of a superior, which results in the injury of a subordinate employee.

In the very able and noted opinion delivered by Judge Robertson in the case of the Louisville & Nashville R. Co. v. Collins, 2 Duvall, 118, there appears language as follows: "Subordinates can not hazard gross negligence, which borders on fraud and crime. * * While the company may not be responsible to them for his ordinary negligence, both justice and policy require that it should be held liable for his gross negligence as the chief and controlling agent in the management of its running trains."

Since the opinion was delivered in Louisville & Nashville R. Co. v. Collins, it has been the rule in this State that subordinates associated with a superior in conducting the same work or engaged in the same field of labor can only recover damages of the master for the gross negligence of the superior. (Louisville & Nashville R. Co. v. Rains, 15 Ky. Law Rep., 423.)

The engineer and the porter were engaged in the same department of the service. They were engaged in making up the train, which was connected with the running operations of the railroad.

For the reasons given we think the court erred in giving instruction No. 5.

By instruction No. 3 the court attempted to define gross negligence.

While in the opening part of this instruction the court gave the jury a part of the definition of gross negligence, yet the instruction concludes with practically a definition of ordinary neglect. The effect of this was to allow the jury to find for the plaintiff on proof of ordinary neglect; also to allow the jury to award punitive damages. This was error, as it is only in cases of gross neglect can there be a recovery, much less permitting the jury to award punitive damages.

It is insisted for appellant that the court should have given an instruction to the effect that if the plaintiff received his injuries by want of experience or skill he could not recover. There was no proof in this record upon which to base such an instruction. It is insisted that the court should have told the jury that the plaintiff undertook all the risks and hazards ordinarily incident to or involved in the performance of all the duties which his employment embraced.

It is true that one thus entering the service of another as-

sumes to run all the ordinary risks pertaining to the service. While this is true he does not hazard gross negligence. To give an instruction to the effect that the plaintiff entering the service of the defendant assumed the ordinary risks pertaining to such service would be simply stating an abstract principle and would be misleading. When the jury is told in effect the plaintiff is only entitled to recover for gross neglect, it of course precludes the idea that they are authorized to find for ordinary neglect.

The judgment is reversed, with directions that further proceedings be had in conformity with this opinion.