## Burton Construction Company v. Metcalfe.

(Decided January 27, 1915.)

### Appeal from Estill Circuit Court.

1. Master and Servant—Negligence.—A master is not responsible for injuries to an employee caused by the ordinary negligence of a superior employee, but is responsible for such injuries to a subordinate caused by the gross negligence of a superior.

2. Master and Servant—Negligence—Exemplary Damages.—The servant can not recover exemplary damages against a master for an injury caused by even the gross negligence of a superior employee, but may recover compensatory damages on account of injuries resulting from gross negligence of a superior employee.

3. Master and Servant—Negligence.—The master is not responsible for injuries resulting to a servant, and which were caused by the negligence, either ordinary, or gross, of a fellow servant in the same class with himself, and engaged in the same field of labor.

4. Master and Servant—Damages—Negligence.—An act done by a servant in the immediate presence of a superior, and by the command of a superior, is the act of the superior, and the master is responsible for the damages resulting from such act, if it be an act of gross negligence on the part of the superior employee.

5. Master and Servant—Assumption of Risk.—While a servant in engaging in work for a master assumes all the risks and dangers incidental to the work in which he is engaged, he does not assume the hazards and dangers resulting from the negligence of the master, or the gross negligence of his superior servant in authority, in the conduct of the work.

6. Master and Servant—Assumed Risk.—The doctrine of assumed risk arises out of the contractual relations between the master and servant, and it can not be presumed that the servant contracts to risk the hazards and dangers to himself, arising from the gross negligence of a superior, or the negligence of the master.

ROBERT R. FRIEND and RIDDLE & FRIEND for appellant.

CLARENCE MILLER, SCOTT & HAMILTON and R. W. SMITH for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

On the 15th day of July, 1912, John Metcalfe and a number of other persons, as employes of the Burton Construction Company, were engaged in knapping rock. This we understand to be the process of reducing rocks into very small pieces by the use of a small hammer upon them. The appellee and those associated with him performed this labor upon a flat piece of ground at the mouth of a hollow, at the foot of a hill. While engaged

in this work it was necessary for the appellee and his associates to sit down upon the ground, or upon some very low object, so as to bring them in such proximity to the rocks as to be able to break them into small pieces. The rocks, in large pieces, were hauled by other employes and laid upon the hill side, from nine to twelve feet from the base of the hill, where the men were engaged in the knapping process. On the day stated above, and previous thereto, the appellee and those engaged in the work with him, when they needed material to work upon, would go up to the rock pile upon the hill above them and bring down the rock in their arms to the knapping ground. John Wilkerson was the foreman for the appellant, and was present, directing the work, and had control and charge of the appellee and those associated with him in relation to the work in hand. He directed Jesse Tipton, another employee of the appellant, to take a large sledge hammer, which weighed, according to the proof, about eighteen pounds, and to break up the rock which was on the hill side, just above the men engaged in knapping the rock, and then to carry or hand down the rock to them upon the knapping yard. The evidence for appellee tends to show, and, in fact, he himself testified, that he was sitting with his back to the hill, engaged in his work of knapping rock, and that he did not know that Jesse Tipton was breaking the rock with the sledge hammer on the hillside just above him, and there was other proof conducing to show that the noise made by the hammers used by those engaged in the knapping on the knapping yard prevented the appellee from becoming aware of the operations of Tipton. Appellee says that no one gave him any notice or warning as to what Tipton was doing, and the first he knew of it a piece of rock, weighing about twelve pounds, came down the hill with great force, and struck him upon the back, near the spinal cord and kidneys, and injured him very seriously; that when said rock struck him just above the hips, and near the spinal column, he looked around and seeing Tipton, called to him, "What do you mean, you will kill some one;" that he then began to get sick, and arose, with the assistance of the hammer, to his knees, when he asked the other employes to assist him, and they helped him to the shade, and, securing a broad plank, put him upon it and carried him to the house of David Powell, and then, se-

curing a buggy, he was taken to another house, where he remained abed for twenty-one days. The proof further shows that on the day and night on which he was injured blood passed with his urine, and that after three weeks he was able to go home. He was confined in his own house for forty-six days, and had not been able to do any labor from that time until the time of the trial, which took place on the 13th day of December thereafter. A physician, who testified upon the trial, stated that he had on that day examined appellee, and that he found a condition of atrophy existing, and a wasting of the muscle of the back, and, in his opinion, the injury was permanent.

The appellee, in his petition, claimed that the appellant had not used ordinary care to furnish him a safe place in which to work, or to keep it safe while he was engaged in the work, and that appellant, by its agent and foreman, John Wilkerson, was grossly negligent of his safety when he caused Tipton to break the rock on the hill above him in the manner in which he did, and that this negligence was the direct and proximate cause of his injury; that Tipton was performing the work of breaking up the rock by the immediate command and in the presence of Wilkerson, who could, by the exercise of ordinary care, have seen the danger in which appellee was situated from the liability of the stones rolling or being knocked down the hill against him, and knowing of the said danger, had directed Tipton to break the rock at that place, and in that manner, and gave him, appellee, no warning of the danger, and asked that he be allowed damages in the sum of $2,500.00 against appellant.

The defendant, by its answer, traversed all of the allegations of negligence alleged against it, and, in addition, pleaded that the appellee was negligent himself to such a degree that otherwise the injury would not have happened, by sitting with his back to the hill, where he knew the rocks were being broken up in the manner stated, and, in another paragraph, alleged that the injury incurred by appellee was one of the assumed risks incidental to his employment. The allegations in regard to contributory negligence and assumed risk were controverted by reply. The trial resulted in a verdict of the jury awarding to appellee damages in the sum of $800.00. Appellant having filed grounds for a new trial, and same being overruled, he appeals to this court.

The appellant, by its counsel, insists that the judgment ought to be reversed and a new trial granted for three reasons, the first of which is: That the injury complained of by appellee was caused by the act of a fellow-servant of appellee and that appellant is not responsible therefor; second, that the court erred in the instructions given to the jury; and, third, that the court erred in refusing to give instructions asked for by appellant; and we will take up the discussion of these grounds in their order.

The appellant insists very earnestly that Jesse Tipton was a fellow-servant of the appellee, and that the injury to appellee was solely from the act of Tipton, and for that reason there could be no recovery against the appellant. Upon the other hand, the appellee insists that Tipton was not his fellow-servant, and for that reason his injury resulted from a negligent act of another employee of appellant in another field of labor, and that appellant was responsible therefor. We do not think there can be any serious controversy as to the fact that Tipton was a fellow-servant of the appellee. Tipton was engaged in the same kind of labor, except as to the fineness with which he was required to break the rock; he was working at substantially the same place, and substantially performing the same duty of appellee, and was of the same class with appellee, being a common laborer under the authority of the foreman, Wilkerson. The foreman, Wilkerson, being immediately present, and directing the methods by which the rock should be broken, and having directed Tipton to engage in breaking up the rock with the sledge at the place where he did so, and having directed him as to the manner with which he was to break them, and Tipton having followed the orders and directions of the foreman upon that subject, we are of the opinion that the master was responsible for the injurious effects of the act commanded by Wilkerson, which resulted in the injury to appellee, provided appellee was then exercising ordinary care for his own safety. It was the duty of Tipton to obey the order of Wilkerson, and there is no controversy but what he received the command from Wilkerson to break the rock at the place and in the manner in which he did.

In the case of L. & N. R. R. Co. v. Crady (73 S. W., 1126) this court said:

"For appellant it is claimed that Thomas being in the same line of employment as appellee was a fellow-

servant, and that the negligence resulting in the accident, if any one was negligent but appellee, was that of Thomas, and that, therefore, there can be no recovery. There was proof to support the claim of the appellee that Thomas acted under the direct command of his superior, and that therefore his act was the same as if the superior had in person done the thing. In other words, the act was not the result of Thomas' judgment or lack of judgment, or his care or lack of care. The controlling mind in the transaction was that of the foreman.''

In the case of American Machine Co. v. Ferry (141 Ky., 374), where one Kuesler was the foreman of the defendant and in charge of the men making some repairs, this court said:

"If Kuesler was sent there with the laborers, and in charge of them, directing the working, he in doing so represented the master. The duty to furnish the servant a reasonably safe appliance to work with is one not assignable, and the master is liable to Ferry, if Kuesler rendered the coils unsafe, and when he knew they were in an unsafe condition, assigned Ferry to work upon them, the latter being ignorant of the danger. The proof was clear that Ferry was a mere laborer, and knew nothing of the danger of the work; that the danger had been created by the master, and if the proper precautions had been taken, the injury to Ferry would not have occurred.''

Commencing with the case of L. & N. R. R. Co. v. Collins (2 Duvall, 118), and in a continuous and uniform line of decisions since that time, this court has held that the master is responsible for the gross negligence of a superior, which resulted in the injury of a subordinate employee. Furthermore, when the servants are of the same rank, and engaged in the same field of labor, the master is not responsible for the gross negligence of a fellow-servant resulting in the injury of another servant.

The foreman being the superior of the appellee and his fellow-laborers, the master is responsible for the grossly negligent act of the foreman, which resulted in the injury to appellee. For these reasons the court did not err in refusing to give an instruction to the jury to find for the appellant.

The negligence in the case at bar did not consist in the manner in which Tipton broke the rock, but the

negligence consisted in the fact that the foreman, knowing that appellee was sitting at the foot of the hill, with his back to the rock pile upon the hill, directed Tipton to break the rocks with a large hammer at the place where they were situated on the hill, just above the appellee, and where, it appears, it would be evident to any one exercising any care that the rocks were liable to be knocked down, or to roll down with considerable force against the back of the appellee. This put the appellee in an unsafe place to do his work, of which fact, according to the evidence, he was given no warning. It was clearly the duty of the foreman, when he caused this work to be done by Tipton, to have warned the appellee of the fact, so that he might take steps to secure his safety, and receiving no warning, the master is responsible, unless appellee had already observed the danger to himself, or could, with the exercise of ordinary care, have known it. If the foreman had directed Tipton, instead of breaking up the rock into pieces at the place where they were, to have rolled them down the hill against the appellee, and on to the knapping yard, without giving appellee any warning, no one would question but what this would have been a grossly negligent act, wanton, and without excuse. To cause Tipton to operate upon the rock in a way which would reasonably appear to any prudent man, would endanger appellee by causing large pieces of them to roll down and strike the appellee while he was engaged in his labor, could not be very far short of the same degree of negligence that he would be guilty of by directing them to be rolled down, as stated above.

It is also the duty of the employer to use ordinary care to secure the safety of his servants from injury, and to adopt a reasonably safe mode in which to do his work, so as to protect his servants from injury.

We will now proceed to discuss the appellant's contention that the court did not properly instruct the jury. The court gave to the jury six instructions, in the first of which it instructed the jury of what actionable negligence consisted, in the second, it defined ordinary care; in the third, it defined gross negligence; in the fourth it defined the rights and duties of both the appellee and the appellant; and in the fifth, it defined the measure of damages which the jury might allow, if they found a verdict for the plaintiff. The sixth instruction only per-

tained to the duty of the jury, if less than twelve of them or as many as nine of them agreed upon a verdict.

The first instruction is as follows: "Actionable negligence is the failure to observe for the protection of the interest of another person that degree of care, precaution and vigilance which the circumstances justly demand, whereby such person suffers injury." It seems to be the fault of this instruction that it opens to the jury too wide a field for speculation, as to what the circumstances of any particular case justly demands. This court has often defined ordinary negligence as being a failure to exercise that care which ordinarily prudent persons would exercise under like or similar circumstances.

While the instruction defining gross negligence is one which has been approved by this court in the case of L. & N. R. R. Co. v. McCoy (81 Ky., 403); I. C. R. R. Co. v. Stewart (63 S. W., 595); C. & O. Ry. Co. v. Broad (77 S. W., 189), and no reversal of this cause could or should be had on account of that instruction. We think it is better, however, to give the instruction which is now most usually given, that gross negligence is the absence of slight care.

The fourth instruction is faulty in that it permits the jury to find for appellee if he was injured by the ordinary negligence of the foreman, Wilkerson. By a uniform line of decisions in this court it has been held that the employer cannot be made responsible for the ordinary negligence of a superior employee, which resulted in an injury to a subordinate employee; that the employer can only be made responsible for the gross negligence of a superior employee, which results in an injury to an inferior one. L. & N. R. R. Co. v. Collins (2 Duvall, 118); Volz v. Railroad Co. (24 S. W., 119); Railroad Co. v. Rains (23 S. W., 505); C., N. O. & T. P. Ry. Co. v. Palmer (33 S. W., 199); Kentucky Distillers & Warehouse Co. v. Schrieber (73 S. W., 769).

The fifth instruction given by the court was erroneous, in that it directed the jury that if it believed from the evidence that the injury complained of by appellee was inflicted on him through the gross negligence of appellant's foreman, that it might find punitive damages against appellant. (C., N. O. & T. P. Ry. Co. v. Palmer; Kentucky Distillers & Warehouse Co. v. Schrieber, supra.)

The rule adopted in this state is that the master may be made liable for any injury resulting to a subordinate from the grossly negligent act of a superior in authority among his employes, but he is in no case liable for anything more than compensatory damages to a subordinate on account of injuries resulting to a subordinate from the gross negligence of a superior.

The instruction marked "Y" offered by appellant and rejected by the court, was one relating to the safety of the place in which appellee was assigned to work by the foreman, Wilkerson, should have been rejected by the court, because it was entirely abstract in its terms and required the jury to find, before they could find a verdict for appellee, that he was injured by the unsafeness of the place in which he was working, instead of the manner in which all of the evidence showed that the injury came about.

The instruction asked for by appellant and rejected by the court, directing the jury that appellee, in accepting employment from appellant, assumed all of the ordinary risks and dangers incident to such employment, and if they believe from the evidence that he was injured by the ordinary risks and dangers incidental to this character of work in which he was engaged, they should find for the defendant. This instruction, we think, was properly refused, for while as an abstract statement of the principles of the law appertaining to a case in which it should be given, it is probably correct, but we are not of the opinion that the injury received by appellee was one of the ordinary risks incidental to his employment, and, besides, an injury caused by an act of negligence by the employer, and which would not have occurred but for the negligence of the employer, cannot be considered in any state of case as an assumed risk on the part of the servant. Assumed risk is one which grows out of the contract between the master and servant by which the servant agrees to assume all of the ordinary risks and dangers incidental to the work in which he is to be engaged, but he in no state of case could be presumed to have agreed to assume the risks and hazards of the negligence of his master or the gross negligence of his superior in authority.

The contention of appellant that the court ought to have given the instruction asked for by it upon the subject of appellee's contributory negligence, is without

merit in this case, because this was substantially given in instruction number four, which was given by the court, and in terms more favorable to the appellant than the one offered by it and rejected.

For the reason above stated, however, the judgment appealed from in this case is reversed, and this cause remanded to the court below with directions to proceed in conformity with this opinion.