## Goodman v. Thomas.

### Same v. Roof.

(Decided March 26, 1915.)

### Appeal from McCracken Circuit Court.

1. New Trial—Grounds—Excessive Damages.—A new trial will be granted on the ground that the damages are excessive, only when the damages allowed are so great and disproportionate to the injury received as to strike the mind at first blush as having been superinduced by passion or prejudice.

2. New Trial—Verdict Disproportionate to Injury.—Where an automobile traveling slowly, attempted to pass a buggy from the rear, and collided with the rear wheel of the buggy, throwing the two occupants thereof to the ground, but without inflicting any permanent or serious injuries upon either of them, a verdict of $500.00 for one of the occupants, and a verdict of $1,500.00 for the other occupant, were so great and disproportionate to the injuries received as to come within Subsection 4 of Section 340 of the Civil Code of Practice, which allows a new trial in cases of excessive damages appearing to have been given under the influence of passion or prejudice.

BERRY & GRASSHAM for appellant.

SAM H. CROSSLAND for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—
Reversing.

While the appellees, J. J. Roof and Mrs. Nell Martin Thomas, were in a buggy driving southwardly on Third Street, in Paducah, Goodman's automobile, driven by his chauffeur, Conley Watts, approached from the rear and tried to pass the buggy. In making the attempt, however, the front end of the automobile struck the left hind wheel of the buggy and tilted it, throwing both appellees upon the ground.

They instituted these two actions, which were tried together before the same jury, and resulted in a verdict and judgment of $500.00 for Roof and $1,500.00 for Mrs. Thomas.

Goodman appeals from these judgments, and asks a reversal upon two grounds: (1) That the verdicts were excessive, and were given under the influence of passion or prejudice; and (2) on account of the misconduct of the attorney for the plaintiffs.

Goodman was not riding in his automobile at the time of the accident. It was occupied by the chauffeur and two of Goodman's friends.

There is no claim that the automobile was speeding; on the contrary, it was traveling slowly; and Watts, the chauffeur, says the accident was caused by the horse shying or lunging in the direction of the automobile when he attempted to pass it.

Appellees contradict Watts in this respect, and say the horse did not become frightened until after the buggy was struck.

Taking up the question of the damages sustained by each of the appellees, we will be guided principally by their testimony.

Roof says his cheek was pretty badly bruised; his chin was peeled; his elbow had a long gash or two, and was bruised; and that his thumb was "bruised and torn up." No bones were broken; Roof's injuries were in no way permanent; and he does not claim that he lost more than two weeks from his business by reason of the accident. As actual damages, Roof claimed the following items: (1) To his buggy, $50.00; (2) injuries to his horse, $10.00; (3) damages to his clothes, from mud, $10.00; doctor's bill and medicine, $7.00; veterinary surgeon, $5.00; two weeks loss of time, $50.00; making a total of $132.00 actual damages, according to Roof's own testimony.

Mrs. Thomas testified that she was thrown out of the buggy face downwards; that she fell on her side and could not get up; that some one helped her get up; that she was very sick and called Dr. Reddick; that her left arm was hurt, and she had no use of it for thirteen days; that she could not move for nine days; that her arm felt like it was dead; that the accident affected her kidneys; that she had not been well since; and that she was subsequently attended by Dr. Bradley and Dr. Burnett.

Dr. Reddick did not testify. Dr. Bradley testified that Mrs. Thomas' shoulder was hurt—her arm seemed to be paralyzed; that she had bladder trouble, and a misplacement of the womb, from which she has since suffered; that it affected the passage of the urine; that she was improving at the time of the trial, which was about six months after the accident; and that $150.00 would be a reasonable charge for his services.

He further said that while Mrs. Thomas had not fully recovered, she had improved and would recover.

Dr. Burnett dressed Mrs. Thomas' wounds shortly after the accident, and found she had some bruises on her back and left shoulder; that he continued to see her, occasionally, for ten or fifteen days; that she complained of the bladder trouble above referred to; and that no bones were broken.

From this evidence it will be seen that Roof's injuries were in no way of a permanent or serious nature, and were, in fact, slight. Putting his actual damage at

$132.00, the highest amount claimed by him, there would remain $368.00 recovered for his slight physical injuries.

Mrs. Thomas' damage is measured entirely by her physical injuries and her doctors' bills. At first impression, one might be inclined to think, from the testimony of Drs. Bradley and Burnett, that her injuries were more serious than she claimed; but, when it is remembered that Dr. Bradley, who was her regular physician, testified that she would recover from her injuries, one must conclude that her injuries were not very serious, and certainly were not permanent.

The rule is that a new trial will be granted because of excessive damages only when the damages allowed are so great and disproportionate to the injury received as to strike the mind at first blush as having been superinduced by passion or prejudice. Civil Code of Practice, Section 340, Sub-section 4; L. & N. R. R. Co. v. Mitchell, 87 Ky., 327; Standard Oil Co. v. Tierney, 92 Ky., 367; L. & N. R. R. Co. v. Long, 94 Ky., 410; New Bell Jellico Co. v. Sowders, 162 Ky., 449.

When we consider that neither of the plaintiffs has received any permanent injury, a recovery aggregating $2,000.00 for an ordinary accident, unaccompanied by any serious results, we not only conclude that the damages are not proportionate to the injury received, but they strike the mind as having been superinduced by passion or prejudice.

If Goodman's servant had been driving an ordinary buggy, similar to the one used by the appellees, and the accident had occurred in every other respect precisely as it did occur, could it be believed that the jury would have returned a verdict aggregating $2,000.00? We would be very slow to reach that conclusion. On the contrary, we are impressed with the fact that the jury must have been influenced or prejudiced in some way—possibly by the fact that appellant's vehicle was an automobile.

We are of opinion these cases come within the rule authorizing a new trial on account of excessive damages.

As the alleged misconduct of counsel for the appellees probably will not occur upon another trial, we refrain from discussing it.

For the error indicated the judgments are reversed, and the cases remanded for further proceedings.