## Nebo Coal Company v. Barnett.

(Decided December 3, 1915.)

### Appeal from Hopkins Circuit Court.

1. Master and Servant—Assumption of Risk.—When a servant undertakes employment he assumes all risks of injuries which are caused by the negligence, either ordinary or gross, of a fellow servant engaged in the same work and upon an equality, as to authority, with himself.

2. Master and Servant—Assumption of Risk.—A servant assumes all risks from the ordinary negligence of a servant superior in authority to himself, engaged in the same line of work, where the negligence does not result in death.

3. Master and Servant—Gross Negligence.—Where the gross negligence of a superior servant causes injury to an inferior servant, it is imputed to the master, and he is liable therefor in damages.

4. Master and Servant—Injury Caused by Superior Servant.—The rule which denies a recovery to an inferior servant against the master for an injury which was caused by the ordinary negligence of a superior servant is limited to the cases where the inferior servant is under the immediate control and supervision of the superior servant, whose negligence results in the injury.

LAFFOON & WADDILL for appellant.

GIBSON & KINCHELOE for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

On the 21st day of February, 1914, Elmer Barnett, who had been in the employ of the appellant, Nebo Coal Company, for several years, was run over by a motor, which was a part of the equipment of the appellant coal company, and very severely injured, and thereafter he filed a petition in ordinary against the appellant, in which he alleged that the injury was caused him by the gross negligence of one of the servants of the company superior in authority to him. The appellant, by its answer, traversed the allegations of the petition, and, also, plead that the injury suffered by appellee arose from a risk

which was incidental to his employment and assumed by him, and, further, that he was guilty of such contributory negligence, that but for which the injury would not have been suffered. The allegations in regard to assumed risk and contributory negligence were traversed by a reply. Upon the trial of the case the jury returned a verdict in favor of appellee for the sum of three thousand dollars, and the court rendered a judgment accordingly. The appellant's motion and grounds for a new trial being overruled, it has appealed to this court.

The facts of the case are as follows:

The appellee had been in the employ of the appellant for about six years before the time of his injury. For some months he held the position known in the mines as "timber boss," and as such it was his duty to supervise the placing of timbers in the mines when it was necessary to have the roof supported by such timbers. When not engaged in that particular line of work he mined coal and did any kind of work that was to be performed in and about the mines. The regular order of work was not being performed in the mine on the day upon which he suffered the injury, on account of which he sued, but he came to the mines early in the morning to see if there was any work which he could get to do. Henry Byrum, the assistant mine superintendent, as claimed by appellee, and "entry boss," as claimed by appellant, was organizing a crew to go into the mine and to clean the motor roads of debris that might be in them. An open-topped flat car, which had no cross pieces at the ends of its bed, but had a board about eight inches in height nailed along each side and another board of about the same width attached to each of these boards, making a flare upon each side, was attached to an electric motor, and was to be used in the work, which was proposed to be done. The car bed was about one and one-half feet above the tracks and the car weighed about one thousand pounds. A chain about five or six feet long was attached to the car at one end and to the electric motor, which was used in propelling the car. The motor was about eleven feet in length and weighed fifteen thousand pounds, and was operated by a motorman, who had a seat upon it. The man who regularly operated the motor, upon the day of the injury and before the crew had started into the mine to clean the motor roads, reported to Byrum that he was unwell and not able to work, when Byrum said that he would

operate the motor himself. Two of the men had gotten on the car and two were sitting at the rear end of the motor, when Byrum addressed himself to appellee and inquired of him, if he desired to work on that day, and the appellee replying that he did, if there was anything that he could get to do, Byrum directed him to get on the car. Appellee, before getting on the car, inquired of Byrum if he knew how to operate the motor, when Byrum assured him that he did, and directed him to get on the car. The front end of the motor was in direct contact with the rear end of the car at this time and there was a slight grade from the place of their position down to the mouth of the coal mine. Byrum started the motor to moving very slowly, which moved the car and caused it to drop away from the motor to the length of the chain which attached them together. The motor was then stopped, but in a moment, thereafter, the electric power was applied with such force that the motor instantly sprang forward and struck the car with such force that the appellee, who was sitting in the car, was thrown out and the other two men in the car were thrown down. The motor ran over the left foot of the appellee and severely crushed his foot. The pain resulting from the injury was very great, and from time to time, thereafter, pieces of broken bone worked out of his foot, and he was unable to perform any kind of labor from that time up to the time of the trial in the following October, and the evidence of one of the attending physicians was that the injury had rendered his ankle stiff, and that the injury was permanent. Other members of the crew testified that they were directed by Byrum to be present that morning to do the work mentioned, and both appellee and the other men of the crew all testified that they were acting under the directions of Byrum, who was the assistant mine foreman. Evidence was given tending to show that, if the motor had been moved as it could and should have been moved, that it would not have come in contact with the car in any forceful way, but that it could and should have been moved slowly and steadily and so as to have avoided any severe contact. Evidence was offered by appellant tending to show that Byrum was not the assistant mine foreman, but was what was called the "entry boss," and that the crew, as well as Byrum, on the occasion of appellee's injury, were acting under the direction and authority of the appellee.

The appellant insists that the court below erred to its prejudice in refusing to peremptorily instruct the jury to find a verdict for it at the conclusion of the appellee's evidence and at the conclusion of all of the evidence. Second: That it erred in the instructions given to the jury, to which appellant objected, and its objection being overruled, excepted; and, third: Because the damages allowed were excessive and appeared to have been given under the influence of passion and prejudice upon the part of the jury.

In support of its contention that the court should have directed a verdict in its favor, the appellant insists that the injury was caused by such contact between the motor and car as always accompanies the movement of a car such as that was, by a motor, and that there is necessarily always more or less jerking and bumping in the handling of such a motor and car, and that the appellee was well acquainted with these facts. It cites the cases of L. & N. R. R. Co. v. Greenwell, 144 Ky., 796; L. & N. R. R. Co. v. Greenwell, 125 S. W., 1054; L. & N. R. R. Co. v. Fox, 20 R., 81; Rose v. L. & N. R. R. Co., 36 S. W., 439; and Yates v. Millers Creek Coal Co., 28 R., 331, as authorities supporting its contention. These cases, however, do not seem to be in point, from the fact that they were cases having to do with injuries resulting from the ordinary, usual and necessary jerking and bumping together of freight cars, propelled by steam engines upon railroads. While such jerks as usually attend the movement of freight trains propelled by locomotives, and which are necessary in the movement of such trains, are not proof of negligence in the employes who are operating the locomotive, and an injury received by an employe from such an ordinary and necessary jerk is a risk assumed by the employe; but an injury which results from a violent, unusual, and unnecessary jerk does not arise from an assumed risk, but a jerk in the operation of a freight train which is violent, unusual, and unnecessary, is evidence from which negligence on the part of the ones operating the locomotive may be inferred. If the proof for the appellee, in the case at bar, is to be believed, the jolt which was received by the car and caused the injury to appellee was unusual, violent, and unnecessary, and while evidence was given for appellant which tended to prove the contrary, the appellee was entitled to have his contention upon that subject sub-

mitted to the jury, and the court was not in error in over-ruling the motion of appellant for a directed verdict. C. N. O. & T. P. Ry. Co. v. Goldston, 156 Ky., 410. There was no evidence which tended remotely to show that it was either usual or necessary in propelling a car, such as the one in use in the case at bar, by an electric motor to cause such a violent contact between the motor and the car, as the evidence for appellee tends to show, did occur.

In instruction number "I" given by the court upon its own motion and to which appellant objected, the court submitted to the jury the question as to whether or not Byrum was superior in authority to appellee, which was proper, but the instruction permitted and directed the jury to find a verdict for appellee if it believed from the evidence "that the motorman, Byrum, failed to exercise ordinary care in the discharge of his duties in operating the motor car and by reason of such failure, if there was such a failure on his part, he so negligently and carelessly operated the same as to cause the injuries," and by the third instruction defined ordinary care and negligence, with reference to the actions of the superior servant Byrum. It defined ordinary care, as used in the instruction, to mean such care as is usually exercised by ordinarily careful and prudent persons under like or similar circumstances to those involved in this case, and negligence, as used in the instruction, to mean the failure to exercise ordinary care. These definitions are abstractly correct, but in this case they should have been given with reference to the duty of the appellee to use ordinary care for his own safety, and not with reference to the actions of the superior servant. By a long line of decisions of this court it has become the well settled law in this State that a master is not liable to a servant for injuries incurred by him on account of the negligence, either ordinary or gross, of a fellow servant in the same work and occupying the same situation as to authority as himself. It is, also, well settled that the ordinary negligence of a superior servant, which results in an injury which does not produce death to an inferior servant can not be imputed to the master. The servant, when he undertakes employment, so far as the master is affected, assumes all risks from injuries to himself which are caused by the negligence, either ordinary or gross, of his fellow servants who are upon the same plane of equality as himself as to authority and engaged in the same work,

and he likewise assumes all risks of injuries which may arise from the ordinary negligence of a superior servant in the same work as himself, where the negligence does not result in death, but all the injuries which are caused to an inferior servant by the gross negligence of his superior servant are imputed to the master, and the servant does not assume the risks of danger which arise from such gross negligence in a servant superior in authority to himself. C., N. O. & T. P. Ry. Co. v. Laney, 154 Ky., 38; United Iron Works Co. v. Bowling, 153 Ky., 683; Milton's Admr. v. Frankfort & Versailles Traction Co., 139 Ky., 57; L. & N. R. R. Co. v. Ford, 104 Ky., 456; C. N. O. & T. P. Ry. Co. v. Marcum, 136 Ky., 245; Burton Construction Co. v. Metcalfe, 162 Ky., 366; L. & N. R. R. Co. v. Collins, 2 Duvall, 118; Volz v. Railroad Co., 24 S. W., 119; Railroad Co. v. Rains, 23 S. W., 505; C., N. O. & T. P. Ry. Co. v. Palmer, 98 Ky., 382, 33 S W, 199; Ky Distilleries & Warehouse Co v. Schreiber, 73 S. W., 769; Greer v. L. & N. R. R. Co., 94 Ky., 169; Link's Admr. v. L. & N. R. R. Co., 107 Ky., 370; L. & N. R. Co. v. Brown, 106 S. W., 795.

The principle, which holds that no recovery can be had, in favor of the servant, against the master for injuries, which arise from the servant's superior's ordinary negligence, is limited to the cases where the superior servant has the immediate control of and supervision over the injured servant, and does not extend to cases where the superior servant's ordinary negligence causes injury to an inferior servant, who is not immediately under his control and supervision. In this case the contention of appellee is that Henry Byrum was the superior servant and had immediate control of and supervision over the appellee in the work they were then engaged in, and the evidence offered by appellee tends to uphold that contention. It, therefore, follows that only the gross negligence of Byrum, resulting in the injury complained of by appellee, can be imputed to the appellant. The court should have so instructed the jury, and should have, also, defined gross negligence as a failure to exercise slight care.

It was the duty of appellee to exercise ordinary care for his own safety, and the court should have so instructed the jury, and defined ordinary care, as applied to the duty of the appellee, instead of the superior servant.

For the reasons above stated the judgment is reversed and remanded for proceedings in conformity to this opinion, and it is, therefore, unnecessary to discuss the third ground relied upon for reversal.